Scott S. McKessy (SM-5479)
Jordan W. Siev (JS-8043)
Reed Smith LLP
599 Lexington Avenue
New York, New York 10022
Tel. (212) 521-5400
Fax. (212) 521-5450

Attorneys for Defendants

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JIMMY BARBERAN AND TATSIANA BARBERAN,

                  Plaintiffs,

      -v-

NATIONPOINT, MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC., NATIONPOINT
LOAN SERVICES, and UNKNOWN OWNERS OF
THE EVIDENCE OF THE DEBT and/or OWNERS
OF THE NOTE,

                Defendants.

Case No. 07-CV-11595 (KMK)

LASALLE BANK NATIONAL ASSOCIATION AS
TRUSTEE FOR FIRST FRANKLIN LOAN TRUST
2006-FF-18 MORTGAGE LOAN ASSET-BACKED
CERTIFICATES, SERIES 2006-FF18

             Cross-Claimant,

      -v-

TATSIANA BARBERAN, JIMMY BARBERAN,
BOARD OF MANAGERS OF SPRING HOLLOW
CONDOMINIUM TWO and JOHN DOE,

            Cross-Defendants.

---

## DECLARATION OF JORDAN W. SIEV IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

Jordan W. Siev declares, under penalty of perjury, as follows:

1.      I am a member of Reed Smith LLP, attorneys for defendants Nationpoint, Inc., s/h/a Nationpoint a Division of National City Bank ("Nationpoint"), Mortgage Electronic Registration Systems, Inc. ("MERS"), and Nationpoint Loan Services ("NLS") (collectively, "Defendants"). I am fully familiar with the facts set forth herein, and submit this declaration, pursuant to 28 U.S.C. § 1746, in support of Defendants' instant motion for judgment on the pleadings pursuant to Fed. R. Civ. Pro. Rules 12(c).

2.      Attached hereto as Exhibit A is a true and correct copy of the Adjustable Rate Note ("Note") referenced in paragraph ¶ 18 of the Complaint, executed by each of the Plaintiffs on October 18, 2006.

3.      Attached hereto as Exhibit B is a true and correct copy of Mortgage agreement No. 10042524001533815, with attachments, referenced in paragraph ¶ 18 of the Complaint, executed by each of the Plaintiffs before a notary public on October 18, 2006.

4.      Attached hereto as Exhibit C are true and correct copies of Notices of Right To Cancel executed by each of the Plaintiffs on October 18, 2006, as referenced in ¶ 27 of the Complaint.

5.      Attached hereto as Exhibit D is a true and correct copy of Federal Reserve Board Model Form H-8, referenced in ¶ 27 of the Complaint, and found at http://www.fdic.gov/regulations/laws/rules/6500-1950.html (last visited June 2, 2008).

6.      Attached hereto as Exhibit E is a true and correct copy of the Verified Complaint filed in *Barberan v. World Savings Bank, FSB, et al.,* Civil Action No. 07-CV-8821 in the United States District Court for the Southern District of New York.

7.      Attached hereto as Exhibit F is a true and correct copy of the Verified Complaint in this matter

8.      Attached hereto as Exhibit G is a true and correct copy of the Defendants' Verified Answer in this matter

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 5, 2008.

_____
Jordan W. Siev

# EXHIBIT A

# ADJUSTABLE RATE NOTE

**(LIBOR Six-Month Index (As Published In *The Wall Street Journal*)—Rate Caps)**

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

| October 18, 2006 | TROY | Michigan |
|---|---|---|
| [Date] | [City] | [State] |

**15 Woodlake Drive
MIDDLETOWN, NY 10940**

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $209,000.00 (this amount is called "Principal"), plus interest, to the order of Lender. Lender is NATIONPOINT  A DIVISION OF NATIONAL CITY BANK

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of     7.6500%. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on     December 01, 2006 I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on     November 01, 2036     , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 150 ALLEGHENY CENTER MALL, PITTSBURGH, PA 15212

or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $ 1,482.88     . This amount may change.

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

MULTISTATE ADJUSTABLE RATE NOTE—LIBOR SIX-MONTH INDEX (AS PUBLISHED IN *THE WALL STREET JOURNAL*)—
Single Family—Fannie Mae Uniform Instrument                                                        Form 3520 1/01

ITEM 6769L1 (0011) MFCD6051                         (Page 1 of 4 pages)                    4001053381  GreatDocs ™
                                                                                      To Order Call: 1-800-968-5775

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on the first day of          November 2009          , and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six months U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding Six and Four Tenths percentage points (      6.4000%) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Change**

The interest rate I am required to pay at the first Change Date will not be greater than          10.6500% or less than          7.6500%. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than One percentage points (      1.0000  %) from the rate of interest I have been paying for the proceeding    6      months. My interest rate will never be greater than          13.6500  % nor less than          7.6500%.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment". When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of        Fifteen        calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be        2.0000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Borrower has executed and acknowledges receipt of pages 1 through 4 of this Note.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____ (Seal)
JIMMY BARBERAN                    -Borrower

_____ (Seal)
TATSIANA BARBERAN                 -Borrower

PAY TO THE ORDER OF            (Seal)
                               -Borrower

FIRST FRANKLIN FINANCIAL CORPORATION

WITHOUT RECOURSE
NationPoint, a division of National City Bank    (Seal)
                                                 -Borrower

FUNDER
Nghia Tran

_____ (Seal)
                               -Borrower

PAY TO THE ORDER OF            (Seal)
                               -Borrower

WITHOUT RECOURSE
FIRST FRANKLIN FINANCIAL CORPORATION

FUNDER    [Sign Original Only]
Nghia Tran

ITEM 676L4 (0011)  MFCD8051          (Page 4 of 4 pages)

Form 3520 1/01
4001053381    GreatDocs™
To Order Call: 1-800-968-5775

EXHIBIT B

After Recording Return To:

NATIONPOINT
c/o SECURITY CONNECTIONS
1935 INTERNATIONAL WAY
IDAHO FALLS, ID 83402



CERTIFIED TRUE COPY

—————————————————— [Space Above This Line For Recording Data] ——————————————————

# MORTGAGE

*C# 2329736*

MIN: 100425240010533815

**WORDS USED OFTEN IN THIS DOCUMENT**

**(A)  "Security Instrument."** This document, which is dated                    October 18, 2006                    , together with all Riders to this document, will be called the "Security Instrument."

**(B)  "Borrower."** JIMMY BARBERAN AND TATSIANA BARBERAN, HUSBAND AND WIFE

whose address is 15 WOODLAKE DR, MIDDLETOWN, NY  10940

sometimes will be called "Borrower" and sometimes simply "I" or "me."

**(C)  "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. FOR PURPOSES OF RECORDING THIS MORTGAGE, MERS IS THE MORTGAGEE OF RECORD.

**(D)  "Lender."** NATIONPOINT  A DIVISION OF NATIONAL CITY BANK
will be called "Lender." Lender is a corporation or association which exists under the laws of United States of America
                    . Lender's address is 2150 NORTH FIRST STREET, SAN JOSE, California
95131

**(E)  "Note."** The note signed by Borrower and dated                    October 18, 2006                    , will be called the "Note." The Note shows that I owe Lender Two Hundred Nine Thousand and no/100
                         Dollars (U.S. $ 209,000.00                         ) plus interest and other amounts that may be payable. I have promised to pay this debt in Periodic Payments and to pay the debt in full by November 01, 2036

**(F)  "Property."** The property that is described below in the section titled "Description of the Property," will be called the "Property."

NEW YORK—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3033 1/01

ITEM 2740L1 (0011)—MERS MFNY3115                    *(Page 1 of 14 pages)*                    4001053351GreatDocs™
                                                                                           To Order Call: 1-800-968-5775

CERTIFIED TO BE
A TRUE AND CORRECT COPY
OF THE ORIGINAL

**(G) "Loan."** The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H) "Sums Secured."** The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property" sometimes will be called the "Sums Secured."

**(I) "Riders."** All Riders attached to this Security Instrument that are signed by Borrower will be called "Riders." The following Riders are to be signed by Borrower [check box as applicable]:

[X] Adjustable Rate Rider    [X] Condominium Rider    [ ] Second Home Rider

[ ] Balloon Rider    [ ] Planned Unit Development Rider    [ ] Other(s) [specify]

[ ] 1-4 Family Rider    [ ] Biweekly Payment Rider

**(J) "Applicable Law."** All controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable, judicial opinions will be called "Applicable Law."

**(K) "Community Association Dues, Fees, and Assessments."** All dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization will be called "Community Association Dues, Fees, and Assessments."

**(L) "Electronic Funds Transfer."** "Electronic Funds Transfer" means any transfer of money, other than by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items."** Those items that are described in Section 3 will be called "Escrow Items."

**(N) "Miscellaneous Proceeds."** "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than Insurance Proceeds as defined in, and paid under the coverage described in, Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property. A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."

**(O) "Mortgage Insurance."** "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment."** The regularly scheduled amount due for (i) principal and interest under the Note, and (ii) any amounts under Section 3 will be called "Periodic Payment."

**(Q) "RESPA."** "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.



**BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY**

I mortgage, grant and convey the Property to MERS (solely as nominee for Lender and Lender's successors in interest) and its successors in interest subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

    (A)   Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

    (B)   Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

    (C)   Keep all of my other promises and agreements under this Security Instrument and the Note.

I understand and agree that MERS holds only legal title to the rights granted by me in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lenders's successors and assigns) has the right:

    (A)   to exercise any or all those rights, including, but not limited to, the right to foreclose and sell the Property; and

    (B)   to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

**DESCRIPTION OF THE PROPERTY**

I give MERS (solely as nominee for Lender and Lender's successors in interest), rights in the Property described in (A) through (G) below:

    (A)   The Property which is located at               **15 Woodlake Drive**
                                                      [Street]

            **MIDDLETOWN**        , New York        **10940**
            [City, Town or Village]                              [Zip Code]

    This Property is in ORANGE                              County. It has the following legal description:

    LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF
    AS OF EXHIBIT "A"

    (B)   All buildings and other improvements that are located on the Property described in subsection (A) of this section;

    (C)   All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"

    (D)   All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;

    (E)   All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

    (F)   All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

    (G)   All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.


**BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY**

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

**PLAIN LANGUAGE SECURITY INSTRUMENT**

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

**COVENANTS**

I promise and I agree with Lender as follows:

   1.   **Borrower's Promise to Pay.** I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

   Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

   Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

   2.   **Application of Borrower's Payments and Insurance Proceeds.** Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:

First, to pay interest due under the Note;

Next, to pay principal due under the Note; and

Next, to pay the amounts due Lender under Section 3 of this Security Instrument.

Such payments will be applied to each Periodic Payment in the order in which it became due.

Any remaining amounts will be applied as follows:

First, to pay any late charges;

Next, to pay any other amounts due under this Security Instrument; and

Next, to reduce the principal balance of the Note.

   If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

Voluntary prepayments will be applied as follows: First, to any prepayment charges; and Next, as described in the Note.

Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

**3.    Monthly Payments for Taxes and Insurance.**

**(a)    Borrower's Obligations.** I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward the payment of the following items which are called "Escrow Items:"

(1)    The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a Lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien;"

(2)    The leasehold payments or ground rents on the Property (if any);

(3)    The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;

(4)    The premium for Mortgage Insurance (if any);

(5)    The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and

(6)    If required by Lender, the amount for any Community Association Dues, Fees, and Assessments.

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3.

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

**(b)    Lender's Obligations.** Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow

NEW YORK—Single Family—Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**

Form 3033 1/01

400105338 GreatDocs™
To Order Call: 1-800-968-5775



Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

(c)   **Adjustments to the Escrow Funds.** Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

4.   **Borrower's Obligation to Pay Charges, Assessments And Claims.** I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also pay ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all Liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security Instrument is superior to the Lien held by that Person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

5.   **Borrower's Obligation to Maintain Hazard Insurance or Property Insurance.** I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires insurance, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c) Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.    **Borrower's Obligations to Occupy The Property.** I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

7.    **Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.**

(a)    **Maintenance and Protection of the Property.** I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or Condemnation (as described in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

(b)    **Lender's Inspection of Property.** Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

8.    **Borrower's Loan Application.** If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information

NEW YORK—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3033 1/01

ITEM 2743L7 (0011)—MERS MFNY3115                    (Page 7 of 14 pages)                    4001053381 GreatDocs™
                                                                                                                 To Order Call: 1-800-968-5775


important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

9. **Lender's Right to Protect Its Rights in The Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

Mortgage insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).



As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity, may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance."

It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has—if any—regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

11.  Agreements about Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.





12.  **Continuation of Borrower's Obligations And of Lender's Rights.**

(a)  **Borrower's Obligations.** Lender may allow me, or a Person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument, or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

(b)  **Lender's Rights.** Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or Liens against the Property; (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make Immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

13.  **Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations.** If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

14.  **Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

15.  **Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security

**NEW YORK**—Single Family—**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**                    Form 3833 1/01

ITEM 2749L10 (0011)—MERS MFNY3115                    (Page 10 of 14 pages)                    400105336 GreatDocs™
                                                                                               To Order Call: 1-800-968-5775

 

Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16.  Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender will mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17.  Borrower's Copy.** I will be given one copy of the Note and of this Security Instrument.

**18.  Agreements about Lender's Rights If the Property Is Sold or Transferred.** Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission. Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

**19.  Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued.** Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

(a)  I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

(b)  I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c)  I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d)  I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

**20.  Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance.** The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced

NEW YORK—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

ITEM 2743L11 (0011)—MERS MFNY3115                    *(Page 11 of 14 pages)*

Form 3033 1/01

400105338 GreatDocs™
To Order Call: 1-800-968-5775



by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If Applicable Law provides a time period which will elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

21.    **Continuation of Borrower's Obligations to Maintain and Protect the Property.** The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS**

I also promise and agree with Lender as follows:

22.    **Lender's Rights If Borrower Fails to Keep Promises and Agreements.** Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another Person may acquire the Property.



This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:

(a)  I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;

(b)  Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:

    (1)  The promise or agreement that I failed to keep or the default that has occurred;

    (2)  The action that I must take to correct that default;

    (3)  A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;

    (4)  That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;

    (5)  That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and

    (6)  That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

(c)  I do not correct the default stated in the notice from Lender by the date stated in that notice.

23.  **Lender's Obligation to Discharge this Security Instrument.** When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

24.  **Agreements about New York Lien Law.** I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

25.  **Borrower's Statement Regarding the Property [check box as applicable].**

[X]  This Security Instrument covers real property improved, or to be improved, by a one-or two family dwelling only.

[ ]  This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

[ ]  This Security Instrument does not cover real property improved as described above.

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 14 of this Security Instrument and in any Rider signed by me and recorded with it.

_____ (Seal)
JIMMY BARBERAN                 -Borrower

_____ (Seal)
TATSIANA BARBERAN              -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

Witness:                                    Witness:

Leslie B. Dorler                            Leslie B. Dorler

State of New York                    )
                                     ) SS.:
County of Orange                     )

On the 18th day of October in the year 2006 , before me, the undersigned, a Notary Public in and for said State, personally appeared JIMMY BARBERAN, TATSIANA BARBERAN

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

                                                    Notary Public
LESLIE B. DORLER
LESLIE B. DORLER
Notary Public, State of New York
No. 01DO6012477
Qualified in Dutchess County
Commission Expires August 31, 20__

NEW YORK—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3033 1/01

ITEM 2746L14 (0011)—MERS MFNY3115                  (Page 14 of 14 pages)

400106333 GreatDocs™
To Order Call: 1-800-968-5775

EXHIBIT A - LEGAL DESCRIPTION

Tax ID Number: **BLOCK 2 LOT 2.40**

Land situated in the **City** of **Middletown** in the County of **Orange** in the State of **NY**

All that certain plot, piece or parcel of land, with the building and improvements thereon erected, situate, lying and being in the City of Middletown, County of Orange and State of New York more accurately bounded and described as follows: The condominium unit (designated as Unit 15, Building 17 in that certain Declaration dated 07-26-88 establishing a plan for one of the buildings known as SPRING HOLLOW CONDOMINIUM, TWO, Middletown, New York and the land on which the buildings are erected pursuant to Articles 9-B of the Real Property Law of the State of New York which Declaration was recorded in the Office of the County Clerk's of Orange County (Division of Land Records) on 07-28-88 in Liber 2980 page 1. This unit is on the floor plans of the buildings certified by Ronald F. Drago, Architect, on December 4, 1987 and filed in said Clerk's Office on the 4th day of December 1987 as Map No. 8630. Together with an undivided 1.7590 percentage of common interest in the common elements as such terms are defined in the Declaration.

Commonly known as: **15 Woodlake Drive, Middletown, NY 10940**

CERTIFIED TO BE
A TRUE AND CORRECT COPY
OF THE ORIGINAL

# CONDOMINIUM RIDER

THIS CONDOMINIUM RIDER is made this    18th    day of    October 2006    ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Note to NATIONPOINT  A DIVISION OF NATIONAL CITY BANK

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

### 15 Woodlake Drive
### MIDDLETOWN, NY 10940

[Property Address]

The Property includes a unit in, together with an undivided interest in the common elements of, a
condominium project known as:

### CITY OF MIDDLETOWN
[Name of Condominium Project]

(the "Condominium Project"). If the owners association or other entity which acts for the Condominium
Project (the "Owners Association") holds title to property for the benefit or use of its members or
shareholders, the Property also includes Borrower's interest in the Owners Association and the uses,
proceeds and benefits of Borrower's interest.

**CONDOMINIUM COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A.  Condominium Obligations.** Borrower shall perform all of Borrower's obligations under
the Condominium Project's Constituent Documents. The "Constituent Documents" are the:
(i) Declaration or any other document which creates the Condominium Project; (ii) by-laws;
(iii) code of regulations; and (iv) other equivalent documents. Borrower shall promptly pay, when
due, all dues and assessments imposed pursuant to the Constituent Documents.

**B.  Property Insurance.** So long as the Owners Association maintains, with a generally
accepted insurance carrier, a "master" or "blanket" policy on the Condominium Project which is
satisfactory to Lender and which provides insurance coverage in the amounts (including
deductible levels), for the periods, and against loss by fire, hazards included within the term
"extended coverage," and any other hazards, including, but not limited to, earthquakes and floods,
from which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the
Periodic Payment to Lender of the yearly premium installments for property insurance on the
Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage
on the Property is deemed satisfied to the extent that the required coverage is provided by the
Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance
coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair
following a loss to the Property, whether to the unit or to common elements, any proceeds payable
to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by
the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**MULTISTATE CONDOMINIUM RIDER**—Single Family—Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**
Form 3140 1/01

ITEM 1623L1 (0011)   MFCD2061        *(Page 1 of 2 pages)*        4001065381        GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

CERTIFIED TO BE
A TRUE AND CORRECT COPY
OF THE ORIGINAL

C. **Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

D. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

E. **Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

F. **Remedies.** If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in pages 1 and 2 of this Condominium Rider.

_____ (Seal)          _____ (Seal)
JIMMY BARBERAN            -Borrower          TATSIANA BARBERAN          -Borrower

_____ (Seal)          _____ (Seal)
                          -Borrower                                     -Borrower

_____ (Seal)          _____ (Seal)
                          -Borrower                                     -Borrower

MULTISTATE CONDOMINIUM RIDER—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3140 1/01

# ADJUSTABLE RATE RIDER
### (LIBOR 6 Month Index (As Published In The Wall Street Journal) - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this     18th     day of     October 2006
, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to
NATIONPOINT A DIVISION OF NATIONAL CITY BANK
(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

15 Woodlake Drive
MIDDLETOWN, NY 10940
[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A.   INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of     7.8500 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

**4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES**
(A)  Change Dates
The interest rate I will pay may change on the first day of     November 2009     ,
and on that day every     6th     month thereafter. Each date on which my interest rate could change is called a "Change Date."
(B)  The Index
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for 6 month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."
If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.
(C)  Calculation of Changes
Before each Change Date, the Note Holder will calculate my new interest rate by adding  Six and Four Tenths
percentage points (     6.4000 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

MULTISTATE ADJUSTABLE RATE RIDER-LIBOR 6 MONTH INDEX
(AS PUBLISHED IN THE WALL STREET JOURNAL) – Single Family

ITEM 54074L1 (C57811) (0610)    MFCD6053        *(Page 1 of 3 pages)*        4901053381    GREATLAND ■
                                                                            To Order Call: 1-800-582-9295 ☐ Fax 616-791-1131

CERTIFIED TO BE
A TRUE AND CORRECT COPY
OF THE ORIGINAL

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D)  Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than        10.6500% or less than       7.6500%. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than One
percentage point(s) (        1.0000%) from the rate of interest I have been paying for the preceding        6        months; subject to the following limits: My interest rate will never be greater than        13.6500%, nor less than        7.6500%.

(E)  Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F)  Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the telephone number of a person who will answer any question I may have regarding the notice.

**B.    TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 17 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 3 of this Adjustable Rate Rider.

_____ (Seal)
JIMMY BARBERAN                   -Borrower

_____ (Seal)
TATSIANA BARBERAN                -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

*[Sign Original Only]*

MFCD8053
5407443

*(Page 3 of 3 pages)*

4001053381

# EXHIBIT C

## NOTICE OF RIGHT TO CANCEL (General) 

To: JIMMY BARBERAN

Property Address: 15 Woodlake Drive MIDDLETOWN, NY 10940

**Your Right to Cancel**

You are entering into a transaction that will result in a mortgage, lien or security interest on/in your home. You have a legal right under federal law to cancel this transaction, without cost, within three (3) business days from whichever of the following events occurs last:

(1) the date of the transaction, which is  October 18, 2006                    ; or
(2) the date you received your Truth-in-Lending disclosures; or
(3) the date you received this notice of your right to cancel.

If you cancel this transaction, the mortgage, lien or security interest is also cancelled. Within twenty (20) calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage, lien or security interest on/in your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within twenty (20) calendar days of your offer, you may keep it without further obligation.

**How to Cancel**

If you decide to cancel this transaction, you may do so by notifying us in writing at:

(Name of Lender)  NATIONPOINT
A DIVISION OF NATIONAL CITY BANK

(Business Address)
25530 COMMERCENTRE DRIVE
LAKE FOREST, CA 92630

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one (1) copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than midnight of    October 21, 2006
[Date]

(or midnight of the third business day following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I WISH TO CANCEL.**

_____        _____
Consumer's Signature                                    Date

I herewith acknowledge receipt of two copies of this notice.

X  _Jimmy Barberan_____        _10/18/06_____
Consumer's Signature                                    Date

© GREATLAND 1996
ITEM 7251LD (0201)  MFCD2070

4001053381        GREATLAND ®
To Order Call: 1-800-530-9393 □ Fax 616-791-1131

**NOTICE OF RIGHT TO CANCEL (General)** 

To: TATSIANA BARBERAN

Property  15 Woodlake Drive
Address:  MIDDLETOWN, NY 10940

**Your Right to Cancel**

You are entering into a transaction that will result in a mortgage, lien or security interest on/in your home.  You have a legal right under federal law to cancel this transaction, without cost, within three (3) business days from whichever of the following events occurs last:

(1) the date of the transaction, which is  October 18, 2006                    ; or
(2) the date you received your Truth-in-Lending disclosures; or
(3) the date you received this notice of your right to cancel.

If you cancel this transaction, the mortgage, lien or security interest is also cancelled.  Within twenty (20) calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage, lien or security interest on/in your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within twenty (20) calendar days of your offer, you may keep it without further obligation.

**How to Cancel**

If you decide to cancel this transaction, you may do so by notifying us in writing at:

(Name of Lender)  NATIONPOINT
A DIVISION OF NATIONAL CITY BANK

(Business Address)

25530 COMMERCENTRE DRIVE
LAKE FOREST, CA 92630
You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one (1) copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than midnight of        October 21, 2006
[Date]

(or midnight of the third business day following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I WISH TO CANCEL**

_____
Consumer's Signature                           Date  _____

I herewith acknowledge receipt of two copies of this notice.

X  _____                  10-18-06
Consumer's Signature                                Date

# EXHIBIT D

H–8—RESCISSION MODEL FORM (GENERAL)[1]

NOTICE OF RIGHT TO CANCEL

**Your Right to Cancel**

You are entering into a transaction that will result in a [mortgage/lien/security interest] [on/in] your home. You have a legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occurs last:

(1)  the date of the transaction, which is _____ ; or

(2)  the date you received your Truth in Lending disclosures; or

(3)  the date you received this notice of your right to cancel.

If you cancel the transaction, the [mortgage/lien/security interest] is also cancelled. Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the [mortgage/lien/security interest] [on/in] your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

**How to Cancel**

If you decide to cancel this transaction, you may do so by notifying us in writing, at (creditor's name and business address).

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than midnight of (date)       (or midnight of the third business day following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

I WISH TO CANCEL

_____
Consumer's Signature         Date

---

1 Source = http://www.fdic.gov/regulations/laws/rules/6500-1950.html (last visited June 2, 2008)

# EXHIBIT E



☐ORIGINAL

Jose Barberan
72 N. State Road
Box 103
Briarcliff Manor, NY 10510
(914) 432-3059

# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSE BARBERAN, ) | Case No. 07 CIV. 8921 |
| Plaintiff, ) | VERIFIED COMPLAINT BRIEANT |
| vs. ) | Quiet Title, |
| ) | TILA (15 U.S.C. § 1601 et seq.), |
| WORLD SAVINGS BANK, FSB, a/k/a ) | Breach of Contract |
| WORLD SAVINGS BANK, FSB, A FEDERAL ) | |
| SAVINGS BANK, ISAOA; ) | |
| ) | |
| UNKNOWN OWNERS OF THE EVIDENCE OF ) | |
| THE DEBT and/or OWNERS OF THE NOTE, ) | |
| ) | |
| Defendants. ) | [Supplemental State Claims] |

I, Jose Barberan, declare:

### Preliminary Statement

1.      Defendants violated and impaired Plaintiff's Constitutional rights, statutory and common

law rights to own property and the privacy of his own home. My home is my castle.

VERIFIED COMPLAINT                                                    Page 1 of 9

2.    This action is an action for damages and equitable relief, including compensatory damages, punitive damages and attorney's fees and costs, to quiet the title to Plaintiff's property, to redress violation of the Plaintiff's constitutional and statutorily protected rights, state statutory and common law rights.

3.    Plaintiff seeks rescission of the loan agreement, cancellation of the Note and Mortgage, cancellation of the foreclosure proceedings, restoration of title to the property in Plaintiff's name, restitution of all money, including loan fees, paid by Plaintiff, restitution of all closing costs paid by Plaintiff for said loan, and other equitable relief as this Court deems proper.

4.    In this Complaint, allegations marked (*) are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

### Jurisdiction and Venue

5.    Jurisdiction is under including but limited to 12 U.S.C. § 2614; 28 U.S.C. §§ 636, 1251, 1331, 1332, 1338, 1345, 1346, 1348, 1362, 1367, 1491, 1652, 2201; 12 U.S.C. §§ 632, 2610, 3416; 15 U.S.C. §§ 4, 45, 687c, 1051, 1121, 1640, 1692k, 1681p. Plaintiff and Defendants are citizens of different States. The value at issue exceeds $75,001.00. The Plaintiff requests that this Court invoke its supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

6.    Venue for this action lies in this district since:

(a) Defendants are subject to personal jurisdiction of the State of New York and have sufficient contacts with this district under 28 U.S.C. § 1391 (b)(2).

(b) Substantial acts and omissions in this action occurred in this district under 28 U.S.C. § 1391 (b) (2) and/or (c).

7.    This matter is properly filed in this District. The claims arose in this District and all

VERIFIED COMPLAINT                                                                Page 2 of 9

Defendants reside and/or do business in this District.

### Parties

8.      Plaintiff is a citizen of New York.

9.      Defendant, WORLD SAVINGS BANK, FSB, a/k/a WORLD SAVINGS BANK, FSB, A

FEDERAL SAVINGS BANK, ISAOA ("Lender") is a foreign California corporation, doing

business in New York, although not registered to do business in New York, and its successors and

assigns.

10.     (*) Defendant, UNKNOWN OWNERS OF THE EVIDENCE OF THE DEBT and/or

OWNERS OF THE NOTE is an unknown corporation.

### Factual Allegations:

All the following allegations are intended to be "without limitation" and will be

supplemented by other facts to be found in discovery.

11.     Plaintiff was and is the owner of the property at **16 Forest Ave., Ossining, NY 10562**

(hereafter "the Homestead"), legally described as:

> **ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Village and Town of Ossining, County of Westchester, known and designated as Lot Nos. 15 and 16, in Block 11 on a Certain map entitled "Map of Blocks 10, 11 and 12 on Map of Forest Park, Village of Ossining, Westchester County, NY" on 3/29/1922 as Map No. 2391, bounded and described as follows:**
>
> **BEGINNING at a point on the easterly side of Forest Avenue, said point being 100 feet southerly from the intersection of the easterly side of Forest Avenue, with the southerly side of Robert Place;**
>
> **THENCE RUNNING south 68 degrees 27 minutes 40 seconds East 137.5 feet to a point;**
>
> **THENCE south 21 degrees 32 minutes 20 seconds West 50 feet to a point;**

VERIFIED COMPLAINT                                      Page 3 of 9

THENCE north 68 degrees 27 minutes 40 seconds West 50 feet to a point;

THENCE along said Forest Avenue North 21 degrees 32 minutes 20 seconds East 50 feet to the point or place of BEGINNING.

12. Plaintiff is, and has been, in continuous possession of the Homestead.

13. Plaintiff did not make a forcible entry into the Homestead.

14. Plaintiff is not unlawfully holding the possession of the Homestead by force.

15. Plaintiff has never sold the Homestead.

16. Defendants claim that on or about November 24, 2004, Plaintiff signed a Promissory Note ("Note"), and entered into a consumer mortgage transaction with the Lender (Loan No. 0027447226), in the form of a boilerplate adhesion contract drafted by the Lender, and that the extended consumer credit was subject to a finance charge and was initially payable to the Lender on the face of the Note.

17. Plaintiff denies signature on that Promissory Note and that alleged contract.

18. There was never a meeting of the minds.

19. In fact, Plaintiff did not sign or agree to such a transaction.

20. For purposes of this Complaint, even though Plaintiff did not agree to such transaction nor sign the documents in question, it is assumed that Defendants will succeed in persuading this Court that Plaintiff did so agree and sign. Even if this Court is persuaded that there was such an agreement, there are other problems with the purported agreement that are sufficient to negate it. However, Plaintiff maintains the continuing objection that he did not agree nor sign. All references to "agreement," "transaction," "loan," "signature," "contract," "mortgage," "Promissory Note," etc. are not intended as admissions but are intended to mean "purported/alleged agreement,"

"purported/alleged transaction," "purported/alleged loan," "purported/alleged signature," "purported/alleged contract," "purported/alleged mortgage," "purported/alleged Promissory Note," etc.

21.    (*) At all times relevant to this action, the Lender regularly extended and offered to extend consumer credit subject to a finance charge or which, by written agreement, is payable in more than four installments (not including a down-payment) and offered services in support thereof.

22.    The alleged obligation was secured by the Homestead and principal dwelling of Plaintiff.

23.    (*) The Lender knowingly inserted into the alleged documents several false and/or conclusory statements.

24.    (*) No one ever paid any consideration for the aforementioned Note.

25.    At closing, the Lender failed to give to the Plaintiff the all material disclosures required by the Truth in Lending Act and by other applicable law.

26.    (*) The Lender is not Owner and Holder of the Note.

27.    If the identity of the owner and holder of the Note is not established now, someone else may show up later holding the Note and sue Plaintiff or otherwise attempt to collect.

28.    (*) The Holder has discharged the Promissory Note by materially and fraudulently altering it, and/or cancelling and/or renouncing it.

29.    On September 21, 2007, Plaintiff mailed to Defendant World Savings Bank a "Notice of Cancellation," identifying the loan and stating: "I, Jose Barberan, wish to cancel Loan No. 0027447226 with World Savings Bank, FSB, ..."

30.    Defendant received the "Notice of Cancellation" on or about September 25, 2007.

31.    Over twenty days has passed and Defendant has failed to record the required release of

VERIFIED COMPLAINT                                    Page 5 of 9

security interest.

## First Cause of Action - Quiet Title

### (Against All Defendants)

For his first claim for relief, Plaintiff realleges and incorporates the above paragraphs and further alleges:

32.    At all times relevant to this Complaint, Plaintiff was and is in possession and has been in continuous possession of the Homestead, against all the world, and has paid all lawful property taxes thereon.

33.    Plaintiff has superior and legal title to, and other interest in, the Homestead.

34.    At all times relevant to this Complaint, Plaintiff was and is the owner of the Homestead and entitled to such ownership and use without interference by Defendants.

35.    Defendants' claims to any right, title or interest in the property are false and without merit.

36.    (*) Defendants are not the owners or holders of any promissory note encumbering the Homestead.

37.    Plaintiff brings this suit against Defendants who claim an adverse interest or estate in the Property for the purpose of determining such conflicting or adverse claims, interests or estates.

38.    Plaintiff seeks rescission of the loan, Judgment, Order and Decree quieting title to the Homestead in Plaintiff, and such further equitable relief as the Court deems proper.

## Second Cause of Action - Truth in Lending Act (15 U.S.C. § 1601 et seq.)

### (Against All Defendants)

For his second claim for relief, Plaintiff realleges and incorporates the above paragraphs and further alleges:

VERIFIED COMPLAINT                                    Page 6 of 9

39.    Defendant World Savings Bank made material misrepresentations about the loan.  Plaintiff seeks damages under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq. and § 1640(a), and under state law.  Defendant's failure to give Plaintiff the disclosures required by the TILA regarding adjustable rate mortgages within three (3) days after application violated the TILA and entitles Plaintiff to actual damages under 15 U.S.C. § 1640(a).

40.    (*) Defendant failed to comply with 15 U.S.C. § 1638(a).

41.    Plaintiff acted in reliance on Defendant's faulty TILA disclosures, to Plaintiff's detriment.

42.    As a result, Plaintiff sustained damages in the amount of $255,000.00 or an amount to be determined at trial.

### Third Cause of Action - Breach of Contract
### (Against Defendant World Savings Bank)

43.    For his third claim for relief, Plaintiff realleges and incorporates the above paragraphs and further alleges:

44.    Even though Plaintiff and Defendant did not enter into a contract, this claim is made on the assumption that this Court finds that Plaintiff and Defendant did enter into a contract.

45.    This claim arises under New York contract law.

46.    (*) Plaintiff and Defendant entered into one or more enforceable contract(s), planned and drafted by Defendant.

47.    (*) Plaintiff performed all conditions precedent to Defendant's performance.

48.    (*) Defendant unjustifiably breached the contract(s).

49.    (*) Plaintiff suffered actual and consequential damages or loss proximately caused by that breach.

VERIFIED COMPLAINT                                                      Page 7 of 9

50.    (*) Defendant, by breaching the contract(s), repudiated them.  Plaintiff hereby indicates that

he accepts Defendant's repudiations so that the contract(s) are discharged.

51.    (*) As a result of Defendants' wrongful actions, Plaintiff suffered actual and consequential

damages exceeding $255,000.00 to be determined at trial, for which Defendant is liable.

### Prayer for Relief:

52.    Plaintiff pray this honorable Court take jurisdiction of this case.

53.    Plaintiff pray for Decrees and Judgments as follows: ·

54.    Enjoin, immediately, all Defendants, during the pendency of this action, and permanently

thereafter, from recording any deeds or mortgages regarding the Homestead;  from selling,

assigning or transferring mortgages, trust deeds or obligations relating to the Homestead;  from

instituting, prosecuting, or maintaining nonjudicial or judicial foreclosure proceedings against the

Homestead;  from instituting, prosecuting, or maintaining ejectment or F.E.D. proceedings against

Plaintiff;  or from otherwise taking any steps to deprive Plaintiff of ownership and/or enjoyment of

the Homestead.

55.    Declaratory judgment that the alleged contract is unconscionable.

56.    Declaratory judgment that Plaintiff has clear title to the property, free from any

encumbrances by Defendants, and that Defendants have no valid security interest in Plaintiff's

property, or in the alternative, reformation of the contract.

57.    On Plaintiff's First Claim (Quiet Title):

          (A) a Judgment and Decree quieting title in favor of Plaintiff;

          (B) Order Defendants to rescind and cancel the alleged contract in its entirety and

return to Plaintiff any and all of their original signed documents; or in the alternative, money

VERIFIED COMPLAINT                                            Page 8 of 9

judgment in an amount sufficient to retire the alleged contract;

      (C) Order Defendant to take all action necessary to terminate any security in the Homestead created under the transaction and that the Court declare all such security void, including but not limited to the aforementioned deed of trust.

58.    On Plaintiff's Second Claim (TILA): a Judgment and Decree for $1,000.00 per violation, rescission, punitive damages, actual damages, attorney fees and costs;

59.    On Plaintiff's Third Claim (Breach of Contract): a Judgment and Decree for $255,000.00, punitive damages, actual damages, attorney fees and costs, against World Savings Bank;

60.    Such other relief as the Court deems just and proper.

## VERIFICATION

    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. See 28 U.S.C. 1746.

Executed by: _Jose Barberan_     DATED: _10 / 12_/2007

Jose Barberan, Plaintiff
72 N. State Road
Box 103
Briarcliff Manor, NY 10510
(914) 432-3059

# EXHIBIT F

Jimmy Barberan
Tatsiana Barberan
15 Woodlake Drive
Middletown, NY 10940
(845)342-6473



# IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF NEW YORK

**'07 CIV 11595**

**JUDGE KARAS**

| | |
|---|---|
| JIMMY BARBERAN AND TATSIANA<br>    BARBERAN, HUSBAND AND WIFE, | Case No.: |
| Plaintiffs, | **VERIFIED COMPLAINT** |
| vs. | **Quiet Title,** |
| | **TILA (15 U.S.C. § 1601 et seq.),** |
| NATIONPOINT A DIVISION OF NATIONAL<br>    CITY BANK; | **Breach of Contract,**<br>**FCRA (15 U.S.C. § 1681),** |
| MORTGAGE ELECTRONIC REGISTRATION<br>    SYSTEMS, INC., ATIMA; | |
| NATIONPOINT LOAN SERVICES, ISAOA; | |
| UNKNOWN OWNERS OF THE EVIDENCE OF<br>THE DEBT and/or OWNERS OF THE NOTE, | |
| Defendants. | **[Supplemental State Claims]** |

We, Jimmy and Tatsiana Barberan, declare:

## Preliminary Statement

1.      Defendants violated and impaired Plaintiffs' Constitutional rights, statutory and common

law rights to own property and the privacy of our their home. Our home is our castle.

VERIFIED COMPLAINT                                                    Page 1 of 11

2.     This action is an action for damages and equitable relief, including compensatory damages, punitive damages and attorney's fees and costs, to quiet the title to Plaintiffs' property, to redress violation of the Plaintiffs' constitutional and statutorily protected rights, state statutory and common law rights.

3.     Plaintiffs seek rescission of the loan agreement, cancellation of the Note and Mortgage, cancellation of the foreclosure proceedings, restoration of title to the property in Plaintiffs' names, restitution of all money, including loan fees, paid by Plaintiffs, restitution of all closing costs paid by Plaintiffs for said loan, and other equitable relief as this Court deems proper.

4.     In this Complaint, allegations marked (*) are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

## Jurisdiction and Venue

5.     Jurisdiction is under including but limited to 12 U.S.C. § 2614; 28 U.S.C. §§ 636, 1251, 1331, 1332, 1338, 1345, 1346, 1348, 1362, 1367, 1491, 1652, 2201; 12 U.S.C. §§ 632, 2610, 3416; 15 U.S.C. §§ 4, 45, 687c, 1051, 1121, 1640, 1692k, 1681p. Plaintiffs and Defendants are citizens of different States. The value at issue exceeds $75,001.00. The Plaintiffs request that this Court invoke its supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

6.     Venue for this action lies in this district since:

(a) Defendants are subject to personal jurisdiction of the State of New York and have sufficient contacts with this district under 28 U.S.C. § 1391 (b)(2).

(b) Substantial acts and omissions in this action occurred in this district under 28 U.S.C. § 1391 (b) (2) and/or (c).

7.     This matter is properly filed in this District. The claims arose in this District and all

VERIFIED COMPLAINT                                           Page 2 of 11

Defendants reside and/or do business in this District.

Parties

8.    Plaintiffs are citizens of New York.

9.    Defendant, NATIONPOINT A DIVISION OF NATIONAL CITY BANK ("Lender") is a foreign corporation, doing business in New York, although apparently not registered to do business in New York, and its successors and assigns.

10.    Defendant, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., As Their Interests May Appear ("MERS") is a Delaware corporation.

11.    Defendant, HOME LOAN SERVICES, INC., d.b.a. NATIONPOINT LOAN SERVICES, Its Successors And Or Assigns, is a foreign corporation, doing business in New York, although apparently not registered to do business in New York; and is possibly a subsidiary of Fidelity National Information Services, Inc., a foreign corporation, doing business in New York, although apparently not registered to do business in New York; and its successors and assigns.

12.    (*) Defendant, UNKNOWN OWNERS OF THE EVIDENCE OF THE DEBT and/or OWNERS OF THE NOTE is an unknown corporation.

Factual Allegations:

All the following allegations are intended to be "without limitation" and will be supplemented by other facts to be found in discovery.

13.    Plaintiffs were and are the owners of the property at **15 Woodlake Drive, Middletown, New York 10940** (hereafter "the Homestead"), legally described as:

**LAND SITUATED IN THE CITY OF MIDDLETOWN IN THE COUNTY OF ORANGE IN THE STATE OF NY**

VERIFIED COMPLAINT                                    Page 3 of 11

**ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, WITH THE BUILDING AND IMPROVEMENTS THEREON ERECTED, SITUATE, LYING AND BEING IN THE CITY OF MIDDLETOWN, COUNTY OF ORANGE AND STATE OF NEW YORK MORE ACCURATELY BOUNDED AND DESCRIBED AS FOLLOWS: THE CONDOMINIUM UNIT (DESIGNATED AS UNIT 15, BUILDING 17 IN THAT CERTAIN DECLARATION DATED 07-26-88 ESTABLISHING A PLAN FOR ONE OF THE BUILDINGS KNOWN AS SPRING HOLLOW CONDOMINIUM, TWO, MIDDLETOWN, NEW YORK AND THE LAND ON WHICH THE BUILDINGS ARE ERECTED PURSUANT TO ARTICLES 9-B OF THE REAL PROPERTY LAW OF THE STATE OF NEW YORK WHICH DECLARATION WAS RECORDED IN THE OFFICE OF THE COUNTY CLERK'S OF ORANGE COUNTY (DIVISION OF LAND RECORDS) ON 07-28-88 IN LIBER 2980 PAGE 1. THIS UNIT IS ON THE FLOOR PLANS OF THE BUILDINGS CERTIFIED BY RONALD F. DRAGO, ARCHITECT, ON DECEMBER 4, 1987 AND FILED IN SAID CLERK'S OFFICE ON THE 4TH DAY OF DECEMBER 1987 AS MAP NO. 8630. TOGETHER WITH AN UNDIVIDED 1.7590 PERCENTAGE OF COMMON INTEREST IN THE COMMON ELEMENTS AS SUCH TERMS ARE DEFINED IN THE DECLARATION).**

14.    Plaintiffs are, and have been, in continuous possession of the Homestead.

15.    Plaintiffs did not make a forcible entry into the Homestead.

16.    Plaintiffs are not unlawfully holding the possession of the Homestead by force.

17.    Plaintiffs have never sold the Homestead.

18.    Defendants claim that on or about October 18, 2006, Plaintiffs signed a Promissory Note ("Note"), and entered into a consumer mortgage transaction with the Lender (Loan No. MIN 100425240010533815). in the form of a boilerplate adhesion contract drafted by the Lender, and that the extended consumer credit was subject to a finance charge and was initially payable to the Lender on the face of the Note.

19.    In fact, Plaintiffs did not sign or agree to such a transaction.

20.    Plaintiffs deny signature on that Promissory Note and that alleged contract.

VERIFIED COMPLAINT                                    Page 4 of 11

21.    There was never a meeting of the minds.

22.    For purposes of this Complaint, even though Plaintiffs did not agree to such transaction nor sign the documents in question, it is assumed that Defendants will succeed in persuading this Court that Plaintiffs did so agree and sign. Even if this Court is persuaded that there was such an agreement, there are other problems with the purported agreement that are sufficient to negate it. However, Plaintiffs maintain the continuing objection that they did not agree nor sign. All references to "agreement," "transaction," "loan," "signature," "contract," "mortgage,""Promissory Note," etc. are not intended as admissions but are intended to mean "purported/alleged agreement," "purported/alleged transaction," "purported/alleged loan," "purported/alleged signature," "purported/alleged contract," "purported/alleged mortgage," "purported/alleged Promissory Note," etc.

23.    (*) At all times relevant to this action, the Lender regularly extended and offered to extend consumer credit subject to a finance charge or which, by written agreement, is payable in more than four installments (not including a down-payment) and offered services in support thereof.

24.    The alleged obligation was secured by the Homestead and principal dwelling of Plaintiffs.

25.    (*) The Lender knowingly inserted into the alleged documents several false and/or conclusory statements.

26.    (*) No one ever paid any consideration for the aforementioned Note.

27.    At closing, the Lender failed to give to the Plaintiffs all material disclosures required by the Truth in Lending Act and by other applicable law. Although the Lender did give Plaintiffs a total of two copies of Notice of Right to Cancel as required by TILA, the Notice of Right to Cancel did not match the Federal Reserve Board Model Form H-8, and contained language not authorized by

statute that was ambiguous and misleading, and the expiration date was not correct .

28.    Plaintiffs kept the loan paid current, up until they rescinded it.

29.    On November 24, 2007, Plaintiffs sent Notice of Rescission to the Lender.

30.    20 days have passed since the Notice of Rescission and Defendants have not returned any money or property and have not recorded a release of the security interest.

31.    (*) The Lender assigned its interest, but neglected to record an assignment in the county records.

32.    (*) MERS has a pattern and practice of recording false assignments in county records.

33.    (*) MERS has recorded, or intends to record, a false assignment of the alleged loan to UNKNOWN OWNERS OF THE EVIDENCE OF THE DEBT and/or OWNERS OF THE NOTE in the Orange County records.

34.    (*) The Lender is not Owner and Holder of the Note.

35.    (*) MERS is not Owner and Holder of the Note.

36.    (*) NATIONPOINT LOAN SERVICES is not Owner and Holder of the Note.

37.    (*) NATIONPOINT LOAN SERVICES did not credit all payments to Plaintiffs' account.

38.    If the identity of the owner and holder of the Note is not established now, someone else may show up later holding the Note and sue Plaintiffs or otherwise attempt to collect.

39.    (*) The Holder has discharged the Promissory Note by materially and fraudulently altering it, and/or cancelling and/or renouncing it.

### First Cause of Action - Quiet Title

### (Against All Defendants)

For their first claim for relief, Plaintiffs reallege and incorporate the above paragraphs and

VERIFIED COMPLAINT                                    Page 6 of 11

further allege:

40.     At all times relevant to this Complaint, Plaintiffs were and are in possession and have been in continuous possession of the Homestead, against all the world, and have paid all lawful property taxes thereon.

41.     Plaintiffs have superior and legal title to, and other interest in, the Homestead.

42.     At all times relevant to this Complaint, Plaintiffs were and are the owner of the Homestead and entitled to such ownership and use without interference by Defendants.

43.     Defendants' claims to any right, title or interest in the property are false and without merit.

44.     (*) Defendants are not the owners or holders of any promissory note encumbering the Homestead.

45.     Plaintiffs bring this suit against Defendants who claim an adverse interest or estate in the Property for the purpose of determining such conflicting or adverse claims, interests or estates.

46.     Plaintiffs seek rescission of the loan, Judgment, Order and Decree quieting title to the Homestead in Plaintiffs, and such further equitable relief as the Court deems proper.

### Second Cause of Action - Truth in Lending Act (15 U.S.C. § 1601 et seq.)

### (Against All Defendants)

For their second claim for relief, Plaintiffs reallege and incorporate the above paragraphs and further allege:

47.     Plaintiffs timely rescinded the loan.  Defendants failed and refused to cooperate with the rescission.

48.     As a result, Plaintiffs sustained damages in an amount to be determined at trial.

### Third Cause of Action - Breach of Contract

VERIFIED COMPLAINT                                              Page 7 of 11

**(Against Defendant NATIONPOINT A DIVISION OF NATIONAL CITY BANK)**

49.    For their third claim for relief, Plaintiffs reallege and incorporate the above paragraphs and further allege:

50.    Even though Plaintiffs and Defendant did not enter into a contract, this claim is made on the assumption that this Court finds that Plaintiffs and Defendant did enter into a contract.

51.    This claim arises under New York contract law.

52.    (*) Plaintiffs and Defendant entered into one or more enforceable contract(s), planned and drafted by Defendant.

53.    (*) Plaintiffs performed all conditions precedent to Defendant's performance.

54.    (*) Defendant unjustifiably breached the contract(s).

55.    (*) Plaintiffs suffered actual and consequential damages or loss proximately caused by that breach.

56.    (*) Defendant, by breaching the contract(s), repudiated them.  Plaintiffs hereby indicates that they accepts Defendant's repudiations so that the contract(s) are discharged.

57.    (*) As a result of Defendants' wrongful actions, Plaintiffs suffered actual and consequential damages exceeding $209,000.00 to be determined at trial, for which Defendant is liable.

**Fourth Cause of Action - Fair Credit Reporting Act (15 U.S.C. § 1691)**

**(Against Defendant NATIONPOINT LOAN SERVICES, ISAOA)**

For his fourth claim for relief, Plaintiffs reallege and incorporate the above paragraphs and further alleges:

58.    Defendant is a person who furnishes information to credit reporting agencies under 15 U.S.C. § 1681s-2.

VERIFIED COMPLAINT                                                Page 8 of 11

59.     (*) Defendant negligently and willfully failed to comply with provisions of the Fair Credit Reporting Act ("FCRA") including, without limitation, failing to comply with 15 U.S.C. § 1681s-2(b). Defendant made false statements to credit bureaus. Defendant neglected to make true statements to credit bureaus.

60.     (*) Because of Defendants' failure, Plaintiffs face a possible wrongful foreclosure of their home, suffered impaired credit, and otherwise suffered actual and consequential damages exceeding $75,001.00 to be determined at trial, for which Defendant is liable.

61.     (*) As a result of Defendants' wrongful actions, Plaintiffs face a possible wrongful foreclosure of their home, and otherwise suffered actual and consequential damages exceeding $75,001.00 to be determined at trial, for which Defendant is liable.

### Prayer for Relief:

62.     Plaintiffs pray this honorable Court take jurisdiction of this case.

63.     Plaintiffs pray for Decrees and Judgments as follows:

64.     Enjoin, immediately, all Defendants, during the pendency of this action, and permanently thereafter, from recording any deeds or mortgages regarding the Homestead; from selling, assigning or transferring mortgages, trust deeds or obligations relating to the Homestead; from instituting, prosecuting, or maintaining nonjudicial or judicial foreclosure proceedings against the Homestead; from instituting, prosecuting, or maintaining ejectment or F.E.D. proceedings against Plaintiffs; or from otherwise taking any steps to deprive Plaintiffs of ownership and/or enjoyment of the Homestead.

65.     Declaratory judgment that the alleged contract is unconscionable.

66.     Declaratory judgment that Plaintiffs have clear title to the property, free from any

VERIFIED COMPLAINT                                          Page 9 of 11

encumbrances by Defendants, and that Defendant have no valid security interest in Plaintiffs' property, or in the alternative, reformation of the contract.

67.    On Plaintiffs' First Claim (Quiet Title):

(A) a Judgment and Decree quieting title in favor of Plaintiffs;

(B) Order Defendants to rescind and cancel the alleged contract in its entirety and return to Plaintiffs any and all of their original signed documents; or in the alternative, money judgment in an amount sufficient to retire the alleged contract;

(C) Order Defendant NATIONPOINT A DIVISION OF NATIONAL CITY BANK to take all action necessary to terminate any security in the Homestead created under the transaction and that the Court declare all such security void, including but not limited to the aforementioned deed of trust.

68.    On Plaintiffs' Second Claim (TILA): a Judgment and Decree for $1,000.00 per violation, rescission, punitive damages, actual damages, attorney fees and costs, against NATIONPOINT A DIVISION OF NATIONAL CITY BANK;

69.    On Plaintiffs' Third Claim (Breach of Contract): a Judgment and Decree for $209,000.00, interest, punitive damages, actual damages, attorney fees and costs, against NATIONPOINT A DIVISION OF NATIONAL CITY BANK;

70.    On Plaintiff's Fourth Claim (FCRA): a Judgment and Decree for $75,001.00, punitive damages, actual damages, attorney fees and costs, against NATIONPOINT LOAN SERVICES, ISAOA;

71.    Such other relief as the Court deems just and proper.

**VERIFICATION**

VERIFIED COMPLAINT                                                    Page 10 of 11

We declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. See 28 U.S.C. 1746.

Executed by: _____  DATED: _12_/_27_/2007
          Jimmy Barberan, Plaintiff
         15 Woodlake Drive
         Middletown, NY 10940
         (845)342-6473

Executed by: _____  DATED: _12_/_27_/2007
         Tatsiana Barberan, Plaintiff
         15 Woodlake Drive
         Middletown, NY 10940
         (845)342-6473

VERIFIED COMPLAINT                                    Page 11 of 11

# EXHIBIT G

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
JIMMY BARBERAN AND TATSIANA
BARBERAN, HUSBAND AND WIFE,

Plaintiff,

**VERIFIED ANSWER**
CV: 07/11595

-against-

Magistrate/Judge:
Judge Karas

NATIONPOINT A DIVISION OF NATIONAL CITY
BANK, MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC., NATIONPOINT LOAN
SERVICES, UNKNOWN OWNERS OF THE
EVIDENCE OF THE DEBT and/or OWNERS OF
THE NOTE,

Defendants.
-------------------------------------------------------------------X

As and for their Verified Answer to the Verified Complaint of the Plaintiffs, the

Defendants, NATIONPOINT, INC. s/h/a NATIONPOINT A DIVISION OF NATIONAL CITY

BANK, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AND

NATIONPOINT LOAN SERVICES, by and through their attorneys, Law Offices of Craig P.

Curcio, herein states and alleges as follows:

**PRELIMINARY STATEMENT**

FIRST:  Deny each and every allegation contained in Paragraph numbered "1" of the complaint

herein.

SECOND:  Deny any knowledge or information sufficient to form a belief as to each and every

allegation contained in Paragraphs numbered "3" and "4" of the complaint herein.

THIRD:  Deny any knowledge or information sufficient to form a belief as to each and every

allegation contained in Paragraph numbered "2" of the complaint herein and refer all questions of

law to the Court.

**JURISDICTION AND VENUE**

FOURTH:  Deny any knowledge or information sufficient to form a belief as to each and every allegation contained in Paragraphs numbered "5" and "6" of the complaint herein and refer all questions of law to the Court.

FIFTH:  Deny any knowledge or information sufficient to form a belief as to each and every allegation contained in Paragraph numbered "7" of the complaint herein.

## PARTIES

SIXTH:  Deny any knowledge or information sufficient to form a belief as to each and every allegation contained in Paragraphs numbered "8", "9", "10", "11" and " 12" of the complaint herein.

## FACTUAL ALLEGATIONS

SEVENTH:  Deny any knowledge or information sufficient to form a belief as to each and every allegation contained in Paragraphs numbered "13", "23", "26", "28", "30", "31", "34", "35", "36" and "39" of the complaint herein and refer all questions of law to the Court.

EIGHTH:  Deny any knowledge or information sufficient to form a belief as to each and every allegation contained in Paragraphs numbered "14", "15", "16", "!7", "18", "19", "20", "21", "22", "24", "29" and " 38" of the complaint herein.

NINTH:  Deny each and every allegation contained in Paragraphs numbered "25", "32", "33" and "37" of the complaint herein.

TENTH:  Deny each and every allegation contained in Paragraph numbered "27" of the complaint herein and refer all questions of law to the Court.

## ANSWERING THE FIRST CAUSE OF ACTION

ELEVENTH:  Repeat and reallege each and every admission and denial heretofore made herein

with respect to those Paragraphs numbered "1" through the unnumbered paragraph preceding Paragraph "40" of the complaint with the same force and effect as if set forth at length herein.

TWELFTH: Deny any knowledge or information sufficient to form a belief as to each and every allegation contained in Paragraphs numbered "40" and "44" of the complaint herein.

THIRTEENTH: Deny any knowledge or information sufficient to form a belief as to each and every allegation contained in Paragraphs numbered "41", "42", "45" and "46" of the complaint herein and refer all questions of law to the Court.

FOURTEENTH: Deny each and every allegation contained in Paragraph numbered "43" of the complaint herein.

## ANSWERING THE SECOND CAUSE OF ACTION

FIFTEENTH: Repeat and reallege each and every admission and denial heretofore made herein with respect to those Paragraphs numbered "1" through the unnumbered paragraph preceding Paragraph "47" of the complaint with the same force and effect as if set forth at length herein.

SIXTEENTH: Deny each and every allegation contained in Paragraph numbered "47" of the complaint herein and refer all questions of law to the Court.

SEVENTEENTH: Deny each and every allegation contained in Paragraph numbered "48" of the complaint herein.

## ANSWERING THE THIRD CAUSE OF ACTION

EIGHTEENTH:  As and for a response to Paragraph "49", Defendants repeat and reallege each and every admission and denial heretofore made herein with respect to those Paragraphs numbered "1" through "48" of the complaint with the same force and effect as if set forth at

length herein.

NINETEENTH:  Deny any knowledge or information sufficient to form a belief as to each and every allegation contained in Paragraphs numbered "50" and "53" of the complaint herein and refer all questions of law to the Court.

TWENTIETH:  Deny each and every allegation contained in Paragraph numbered "54" of the complaint herein.

TWENTY-FIRST:  Deny any knowledge or information sufficient to form a belief as to each and every allegation contained in Paragraph numbered  "52" of the complaint herein.

TWENTY-SECOND:  Deny each and every allegation contained in Paragraphs numbered "51", "55", "56" and "57" of the complaint herein and refer all questions of law to the Court.

## ANSWERING THE FOURTH CAUSE OF ACTION

TWENTY-THIRD:   Repeat and reallege each and every admission and denial heretofore made herein with respect to those Paragraphs numbered "1" through the unnumbered paragraph preceding Paragraph "58" of the complaint with the same force and effect as if set forth at length herein.

TWENTY-FOURTH:  Deny any knowledge or information sufficient to form a belief as to each and every allegation contained in Paragraph numbered "58" of the complaint herein and refer all questions of law to the Court.

TWENTY-FIFTH:  Deny each and every allegation contained in Paragraphs numbered "59", "60" and "61" of the complaint herein.

## PRAYER FOR RELIEF

TWENTY-SIXTH:   Deny any knowledge or information sufficient to form a belief as to each and every allegation contained in Paragraph numbered "62" of the complaint herein and refer all questions of law to the Court.

TWENTY-SEVENTH:  Deny any knowledge or information sufficient to form a belief as to each and every allegation contained in Paragraphs numbered "63" and "71" of the complaint herein.

TWENTY-EIGHTH:   Deny each and every allegation contained in Paragraphs numbered "64", "65", "66" and "67" of the complaint herein and refer all questions of law to the Court.

TWENTY-NINTH:  Deny each and every allegation contained in Paragraphs numbered "68", "69" and "70" of the complaint herein.


AS AND FOR A FIRST SEPARATE AFFIRMATIVE COMPLETE AND/OR PARTIAL DEFENSE, THE DEFENDANTS, NATIONPOINT, INC. s/h/a NATIONPOINT A DIVISION OF NATIONAL CITY  BANK, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AND NATIONPOINT LOAN SERVICES, ALLEGES:


THIRTIETH: That there was no negligence, fault, culpable conduct, deceit, misrepresentations, false assignments, or recording of false documents on the part of Defendants, NATIONPOINT, INC. s/h/a NATIONPOINT A DIVISION OF NATIONAL CITY  BANK, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AND NATIONPOINT LOAN SERVICES, causing the damages alleged in the complaint; furthermore, there was negligence, fault, culpable conduct, deceit, misrepresentations, and the intentional improper and unlawful disavowal by plaintiffs of their lawful financial and other obligations to Defendants, to the extent of total and/or partial diminution of damages alleged in the complaint.

AS AND FOR A SECOND SEPARATE AFFIRMATIVE COMPLETE AND/OR PARTIAL
DEFENSE, THE DEFENDANTS, NATIONPOINT, INC. s/h/a NATIONPOINT A DIVISION
OF NATIONAL CITY BANK, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS,
INC., AND NATIONPOINT LOAN SERVICES, ALLEGES

THIRTY-FIRST: That the complaint fails to state a cognizable cause of action upon which relief

can be granted.

THIRTY-SECOND: As a matter of law, the complaint must be dismissed.

AS AND FOR A THIRD SEPARATE AFFIRMATIVE COMPLETE AND/OR PARTIAL
DEFENSE, THE DEFENDANTS, NATIONPOINT, INC. s/h/a NATIONPOINT A DIVISION
OF NATIONAL CITY BANK, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS,
INC., AND NATIONPOINT LOAN SERVICES, ALLEGES:

THIRTY-THIRD: The complaint is frivolous, meritless and delusional, and attempts to make a

mockery of this Court which warrants the imposition of sanctions.

AS AND FOR A FOURTH SEPARATE AFFIRMATIVE COMPLETE AND/OR PARTIAL
DEFENSE, THE DEFENDANTS, NATIONPOINT, INC. s/h/a NATIONPOINT A DIVISION
OF NATIONAL CITY BANK, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS,
INC., AND NATIONPOINT LOAN SERVICES, ALLEGES:

THIRTY-FOURTH: Plaintiffs' claims are barred by the doctrine of estoppel, and the complaint

must be dismissed as a matter of law.

AS AND FOR A FIFTH SEPARATE AFFIRMATIVE COMPLETE AND/OR PARTIAL
DEFENSE, THE DEFENDANTS, NATIONPOINT, INC. s/h/a NATIONPOINT A DIVISION
OF NATIONAL CITY BANK, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS,
INC., AND NATIONPOINT LOAN SERVICES, ALLEGES:

THIRTY-FIFTH: The alleged acts and/or omissions by Defendants, if any, were not the proximate cause of Plaintiffs' injuries, and the complaint must be dismissed as a matter of law.

WHEREFORE, Defendants, NATIONPOINT, INC. s/h/a NATIONPOINT A DIVISION OF NATIONAL CITY BANK, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AND NATIONPOINT LOAN SERVICES, demand judgment as follows:

(a) Dismissing Plaintiffs' complaint in its entirety, together with the costs and disbursements of this action;

(b) Imposing sanctions on Plaintiffs for bringing a frivolous and meritless claim;

(c) In the alternative, if Plaintiffs prevail, Defendants demand judgment determining the respective percentages of fault on the part of Plaintiffs and Defendants, and other parties and determining the amount of indemnity owing, respectively, if any.

Dated: Middletown, New York
March 6, 2008

Yours,

By:_____
Douglas S. Goldberg (DG-5127)

Law Offices of Craig P. Curcio
Attorney for Defendants, NATIONPOINT, INC.
s/h/a NATIONPOINT A DIVISION OF
NATIONAL CITY BANK, MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS,
INC., AND NATIONPOINT LOAN SERVICES
One Edgewater Drive
Middletown, New York 10940
845.344.2524

TO:
Jimmy Barberan and
Tatsiana Barberan

Plaintiffs *pro se*
15 Woodlake Drive
Middletown, New York 10940
845.342.6473

STATE OF NEW YORK        )
                         ) SS:
COUNTY OF ORANGE         )

DOUGLAS S. GOLDBERG, an attorney duly admitted to practice law in the Courts of

the State of New York and United States District Court, Southern District of New York, hereby

affirms the following under penalty of perjury:

I am an associate of the Law Offices of Craig P. Curcio, counsel for Defendants,

NATIONPOINT, INC. s/h/a NATIONPOINT A DIVISION OF NATIONAL CITY BANK,

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., and NATIONPOINT

LOAN SERVICES, and as such am fully familiar with the facts and circumstances of this action.

I have read the foregoing Verified Answer and know the contents thereof; the same are

true to my own knowledge, except as to those matters therein stated to be alleged on information

and belief, and as to those matters, I believe them to be true.

This affirmation is made by myself and not by the Defendants, NATIONPOINT, INC.

s/h/a NATIONPOINT A DIVISION OF NATIONAL CITY BANK, MORTGAGE

ELECTRONIC REGISTRATION SYSTEMS, INC., and NATIONPOINT LOAN SERVICES,

because Defendants' business is in a county other than the one wherein I maintain my office and

practice.

The grounds of my belief as to all matters not stated upon my own knowledge are as

follows: conference with the client and notes and records in the file.

Dated: Middletown, New York
       March 6, 2008

_____
Douglas S. Goldberg (DG-5127)