UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JIMMY BARBERAN and TATSIANA BARBERAN,

                Plaintiffs,

      -v-

NATIONPOINT, A DIVISION OF NATIONAL CITY
BANK, MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC., ATIMA, HOME
LOAN SERVICES, INC. d.b.a. NATIONPOINT
LOAN SERVICES, LASALLE BANK NATIONAL
ASSOCIATION AS TRUSTEE FOR FIRST
FRANKLIN LOAN TRUST 2006-FF18,
MORTGAGE LOAN ASSET-BACKED
CERTIFICATES, SERIES 2006-FF18, FIRST
FRANKLIN MORTGAGE LOAN TRUST
MORTGAGE LOAN ASSET-BACKED
CERTIFICATES, SERIES 2006-FF18, and
UNKNOWN OWNERS OF THE EVIDENCE OF
THE DEBT and/or OWNERS OF THE NOTE,

                Defendants.

No. 07-CV-11595 (KMK)

OPINION AND ORDER

LASALLE BANK NATIONAL ASSOCIATION AS
TRUSTEE FOR FIRST FRANKLIN LOAN TRUST
2006-FF-18, MORTGAGE LOAN ASSET-BACKED
CERTIFICATES, SERIES 2006-FF18,

                Plaintiff,

      -v-

TATSIANA BARBERAN, JIMMY BARBERAN,
BOARD OF MANAGERS OF SPRING HOLLOW
CONDOMINIUM TWO, and JOHN DOE,

                Defendants.

<u>Appearances:</u>

Jimmy Barberan
Tatsiana Barberan
Middletown, NY
*Pro Se Plaintiffs*

Scott Stephen McKessey, Esq.
Reed Smith LLP
Philadelphia, PA
*Counsel for Defendants*

Jordan W. Siev, Esq.
Joseph Benjamin Teig, Esq.
Reed Smith LLP
New York, NY
*Counsel for Defendants*

Craig P. Curcio, Esq.
Law Offices of Craig P. Curcio
Middletown, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

Jimmy and Tatsiana Barberan ("Plaintiffs"), proceeding pro se, bring this action against

Nationpoint, a Division of National City Bank ("Nationpoint"), Mortgage Electronic Registration

Systems, Inc., Atima ("MERS"), Home Loan Services, Inc. d.b.a. Nationpoint Loan Services

("HLS"), LaSalle Bank National Association as Trustee for First Franklin Loan Trust 2006-FF-

18, Mortgage Loan Asset-Backed Certificates, Series 2006-FF18 ("LaSalle"), First Franklin

Mortgage Loan Trust Mortgage Loan Asset-Backed Certificates, Series 2006-FF18 ("Franklin

Certificates"), and "unknown owners of the evidence of the debt and/or owners of the note,"

asserting claims to quiet title to the property located at 15 Woodlake Drive, Middletown, NY

10940 ("the Property"); for violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et*

*seq.*; and for breach of contract, breach of fiduciary duty, negligence, and wrongful foreclosure. Defendants move to dismiss all of Plaintiffs' claims pursuant to Fed. R. Civ. P. 12(b)(6).  For the reasons stated herein, Defendants' motion is granted in part and denied in part.

## I. Background

For purposes of deciding Defendants' motion, the Court accepts as true the allegations contained in Plaintiffs' Amended Verified Complaint ("Amended Complaint"), described below, and construes them in the light most favorable to Plaintiffs.

### A. Factual Background

Plaintiffs own a condominium, located at 15 Woodlake Drive, Middletown, New York. (Am. Compl. ¶ 47.)  Defendant Nationpoint is characterized by Plaintiffs as a "Lender."  (*Id.* ¶ 9.)  Defendant HLS does business under the name First Franklin Loan Services.  (*Id.* ¶ 45.) Defendant MERS is a Delaware corporation involved in the mortgage industry (*id.* ¶¶ 19-20), which has contracts with one or more Defendants (*id.* ¶ 30), and acts as a nominee for owners of loans, (*id.* ¶¶ 32-33).  Defendant LaSalle is a banking corporation acting as trustee for First Franklin Mortgage Loan Trust 2006-FF18.  (*Id.* ¶ 37.)

"Defendants claim that on or about October 18, 2006, Plaintiffs signed a Promissory Note" ("Note") with Nationpoint and "entered into a consumer mortgage transaction" ("Mortgage") with Nationpoint.  (*Id.* ¶ 52.)  Plaintiffs deny signing "that Promissory Note and that alleged [mortgage] contract" (*id.* ¶ 54), and assert that there "was never a meeting of the minds," (*id.* ¶ 55).  "The alleged obligation was secured by the" Property.  (*Id.* ¶ 58.)  Plaintiffs also claim that Nationpoint inserted false and conclusory statements into the Note and Mortgage documents.  (*Id.* ¶¶ 60-61.)  Despite denying signing the Note and Mortgage, Plaintiffs "kept the

loan paid current, up until they rescinded it." (*Id.* ¶ 70.)  Plaintiffs also claim that the TILA

disclosure forms associated with the loan "did not exactly match the Federal Reserve Board

Model Form H-8" (*id.* ¶ 65), and contained ambiguous and misleading information (*id.* ¶¶ 67-

68), and an incorrect rescission expiration date, (*id.* ¶ 69.)  Plaintiffs attempted to rescind the

loan on November 24, 2007 by sending a "Notice of Rescission" to Nationpoint.  (*Id.* ¶¶ 70-71.)

Plaintiffs allege that MERS concealed the identity of the party for which it acted as a

nominee and "falsely represent[ed] that MERS is still nominee."  (*Id.* ¶ 31.)  Plaintiffs further

allege that MERS "recorded, or intends to record, a false assignment of the alleged loan" to

unknown owners of the Note.  (*Id.* ¶ 77.)  According to Plaintiffs, LaSalle is "not the holder of

any note [or] mortgage relevant to Plaintiffs," despite LaSalle's claims to the contrary.  (*Id.* ¶¶

38-39.)  Plaintiffs also claim that LaSalle and HLS "started foreclosure proceedings" on the

Property in New York state court (*id.* ¶ 126), and that HLS reported the foreclosure proceedings

to credit bureaus, (*id.* ¶ 127.)  As a result, Plaintiffs allege that some of their credit cards were

canceled and that their credit limit was decreased.  (*Id.* ¶ 128.)

B. Procedural Background

Plaintiffs, proceeding pro se, filed an initial complaint on December 27, 2007 against

Nationpoint, MERS, HLS, and "Unknown Owners of the Evidence of the Debt and/or Owners of

the Note."  (Dkt. No. 1.)  Pursuant to this Court's Order, dated December 12, 2008 (Dkt. No. 35),

Plaintiffs filed their Amended Complaint on January 29, 2009.  (Dkt. No. 38.)[1]  Plaintiffs'

Amended Complaint added LaSalle and the Franklin Certificates as Defendants.  (Am. Compl.

---

[1] The Court's order also denied, with leave to re-file, Plaintiffs' and Defendants' motions
for judgment on the pleadings.  (Dkt. No. 35.)

1.)[2]  On March 2, 2009, Defendants filed the instant motion to dismiss all of Plaintiffs' claims in

the Amended Complaint.  (Defs.' Mem. of Law in Supp. of Their Mot. to Dismiss the Am.

Compl. ("Defs.' Mem.") 1-2.)  Pursuant to this Court's Order, dated December 21, 2009 (Dkt.

No. 55), the Parties submitted supplemental briefing on January 4, 2010, regarding preemption

under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*.  On November 19,

2009, the Court set the matter down for oral argument on January 13, 2010.  (Dkt. No. 54.)  On

January 8, 2010, Plaintiffs wrote the Court to advise that they would be "out of state" on January

13, while Defendants wrote to the Court on January 11, 2010, stating that they would "prefer"

another argument date.  The Court canceled the oral argument and decides the instant motion on

the papers.  (Dkt. No. 59.)

## II. Discussion

### A. Standard of Review

#### 1. General Standards

"On a Rule 12(b)(6) motion to dismiss a complaint, the court must accept a plaintiff's

factual allegations as true and draw all reasonable inferences in [the plaintiff's] favor."  *Gonzalez*

*v. Caballero*, 572 F. Supp. 2d 463, 466 (S.D.N.Y. 2008); *see also Ruotolo v. City of New York*,

514 F.3d 184, 188 (2d Cir. 2008) ("We review *de novo* a district court's dismissal of a complaint

pursuant to Rule 12(b)(6), accepting all factual allegations in the complaint and drawing all

---

[2] In a related case, LaSalle, as a plaintiff, brought an action on February 21, 2008 in the Supreme Court of New York, Orange County, to foreclose on the mortgage it claims on the Property.  Plaintiffs removed LaSalle's case to this Court pursuant to 28 U.S.C. § 1441(a) (Case No. 08-CV-2904, Dkt. No. 1), and moved to dismiss the foreclosure, (Case No. 08-CV-2904, Dkt. No. 2).  On May 21, 2008, this Court consolidated LaSalle's foreclosure claim with the instant case.  (Dkt. No. 13.)  On September 15, 2009, the Court denied Plaintiffs' motion to dismiss LaSalle's foreclosure action.  (Dkt. No. 53.)

reasonable inferences in the plaintiff's favor." (internal quotation marks omitted)).  Furthermore, when considering a motion to dismiss a pro se complaint, the court must interpret the complaint liberally to raise the strongest arguments that the allegations suggest.  *See Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (internal citations omitted); *see also Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (internal citations omitted) (noting that courts should hold pro se pleadings "to less stringent standards than formal pleadings drafted by lawyers").

However, mere "conclusions of law or unwarranted deductions" need not be accepted. *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d Cir. 1994).  Similarly, the Court "need not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely."  *Rieger v. Drabinsky* (*In re Livent, Inc. Noteholders Sec. Litig.*), 151 F. Supp. 2d 371, 405 (S.D.N.Y. 2001); *see also Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1095 (2d Cir. 1995) (sustaining dismissal of the complaint where "attenuated allegations" supporting a claim were "contradicted both by more specific allegations in the complaint and by facts of which [the court] may take judicial notice"); *Am. Centennial Ins. Co. v. Seguros La Republica, S.A.*, No. 91-CV-1235, 1996 WL 304436, at *16 (S.D.N.Y. June 5, 1996) ("Allegations are not well pleaded if they are made indefinite or erroneous by other allegations in the same complaint . . . ." (internal quotation marks omitted)). Put more broadly, the "standard to govern the sufficiency of the complaint presumes 'well-pleaded' allegations, and it is only those pleadings the courts are charged to deem true."[3]

---

[3] In *In re Livent*, the court explained that Fed. R. Civ. P. 8(e)(2), which allows a complaint to incorporate alternative claims regardless of consistency, "cannot be construed as an invitation to incoherent, self-contradictory pleadings."  151 F. Supp. 2d at 406.  The court further

*In re Livent*, 151 F. Supp. at 405.

Here, the Court is faced with factual assertions by Plaintiffs that are often facially contradictory, making it difficult for Plaintiffs to adequately support their claims "by showing any set of facts *consistent* with the allegations in the complaint." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007) (emphasis added). Most troubling is Plaintiffs' repeated denials of signing the Note and Mortgage, while simultaneously stating that they kept the loan paid current and that they are entitled to assert claims that are necessarily premised on the existence of the very loan that is the subject of the Note and Mortgage. Specifically, Plaintiffs assert claims for violations of TILA, which requires a consumer credit transaction, and for breach of a mortgage contract. Because the Court is not constrained to accept these incoherent pleadings as true, *see In re Livent*, 151 F. Supp. at 405, the Court construes Plaintiffs' Amended Complaint as stating that Plaintiffs entered into a loan transaction with Nationpoint, secured by a mortgage on the Property. Indeed, such an interpretation raises the strongest arguments that the allegations suggest because without asserting that a loan and mortgage existed, Plaintiffs cannot state a claim pursuant to TILA or for breach of a mortgage contract. However, for purposes of this motion, the Court will accept as true Plaintiffs' statements in the Amended Complaint that they did not sign the *particular* mortgage documents that Defendants cite and, in the alternative, that Defendants inserted "false statements" into the mortgage and note.

The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion

---

observed that the alternative pleading rules require the claims to stand alone. *Id.* at 407. Thus, the factual assertions "must be sufficient to state all the requisite elements of a given theory of liability," even if they are insufficient to support a different theory. *Id.* "That is not to say, however, that Rule 8(e) grants plaintiffs license to plead inconsistent assertions of facts within the allegations that serve as the factual predicates for an independent, unitary claim." *Id.*

to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted) (second alteration in original).  Instead, the Supreme Court has emphasized that "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.*, and that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563.  A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.  If a plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed."  *Id.*; *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" (internal citation omitted) (quoting Fed. R. Civ. P. 8(a)(2)) (alteration in original)).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted).  "To be incorporated by reference, the [c]omplaint must make a clear, definite and substantial reference to the documents." *Thomas v. Westchester County Health Care*

8

*Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002). Additionally, even if not attached or incorporated by reference, a document upon which the complaint "solely relies and which is integral to the complaint may be considered by the court in ruling on such a motion." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (internal quotation marks and emphasis omitted); *see also Munno v. Town of Orangetown*, 391 F. Supp. 2d 263, 268 (S.D.N.Y. 2005) ("It is well-established that the court may consider a document, even if not attached or incorporated by reference, where the complaint 'relies heavily upon its terms and effect,' thus rendering the document 'integral' to the complaint." (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002))). Thus, "'[w]here plaintiff has actual notice . . . and has relied upon these documents in framing the complaint,' the court may consider the documents without converting the Rule 12(b)(6) motion into a [summary judgment] motion under Rule 56." *Munno*, 391 F. Supp. 2d at 268 (quoting *Chambers*, 282 F.3d at 153) (first alteration in original). In addition, "[t]he court may also consider matters of which judicial notice may be taken, even if the corresponding documents are not attached to or incorporated by reference in the complaint." *Id.*; *see also Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) (holding that district court properly took judicial notice on a motion to dismiss of public documents filed with the SEC). In the motion to dismiss context, however, the court should generally take judicial notice "to determine what statements [the documents] contain[] . . . not for the truth of the matters asserted." *Kramer*, 937 F.2d at 774.

The Second Circuit has emphasized that "before materials outside the record may become the basis for a dismissal, several conditions must be met." *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006). "For example, even if a document is 'integral' to the complaint, it must be clear

on the record that no dispute exists regarding the authenticity or accuracy of the document . . .

and that there exist no material disputed issues of fact regarding the relevance of the document."

*Id.* (internal citations omitted); *accord Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004)

(noting that documents attached to and integral to the complaint could be considered on a motion

to dismiss when "authenticity [was] not disputed"); *Landon v. County of Orange*, No.

08-CV-8048, 2009 WL 2191335, at *5 n.5 (S.D.N.Y. July 23, 2009) ("[T]he court may consider

a document that is 'integral' to the complaint, partially quoted in the complaint, or relied upon by

the plaintiff in drafting the complaint if there is no dispute regarding the document's authenticity

or accuracy, and there is no issue of fact as to its relevance.").

      Here, Defendants have submitted to the Court, *inter alia*, the Note and Mortgage

purportedly signed by Plaintiffs (Decl. of Jordan W. Siev in Supp. of Defs.' Mot. to Dismiss the

Am. Compl. ("Siev Decl.") Exs. B, C); Notices of Right to Cancel ("NRCs") sent to Plaintiffs

(*id.* Ex. E); a model NRC form ("Form H-8") (*id.* Ex. I); letters sent by Plaintiffs to LaSalle

attempting to rescind a loan (*id.* Ex. G); and an Orange County Clerk's Office recording page

showing an assignment of a mortgage executed by Plaintiffs from MERS, as nominee for "First

Franklin a Division of National City Bank" to LaSalle, (*id.* Ex. H). Defendants argue that most

of the submitted documents may be considered by the Court in ruling on their Motion to Dismiss

because the documents are referenced in Plaintiffs' Amended Complaint, integral to Plaintiffs'

claims, or subject to judicial notice. (Defs.' Mem. 7-8; Defs.' Reply Mem. of Law in Further

Supp. of Their Mot. to Dismiss the Am. Compl. ("Defs.' Reply Mem.") 3-4.) Plaintiffs object to

the authenticity of all of the documents submitted by Defendants (Pls.' Response in Opp. to

Defs.' Mot. to Dismiss ("Pls.' Response") 4), and argue that these documents are not properly

before the Court on the Motion to Dismiss, (*id.* at 3).  In response, Defendants argue that

Plaintiffs cannot object to the authenticity of judicially-noticed documents and that Plaintiffs

cannot use the documents "as both shield and sword by disputing the authenticity of the very

documents alleged in the Amended Complaint to have been breached or to contain

misrepresentations . . . ."  (Defs.' Reply Mem. 3-5.)

The Court will not consider those documents submitted by Defendants that are not

subject to judicial notice because there are disputes, even if of questionable viability, regarding

the authenticity of these documents.  *See Faulkner*, 463 F.3d at 134 (noting that the record must

be clear that no disputes regarding authenticity exist before documents outside of the complaint

may be considered on a motion to dismiss); *see also Brown v. DeFrank*, No. 06-CV-2235, 2006

WL 3313821, at *22 (S.D.N.Y. Nov. 15, 2006) (stating that the court could not consider certain

exhibits on a motion to dismiss because the plaintiff objected to the exhibits' authenticity); *cf.*

*Cellular Technical Servs. Co., Inc. v. TruePosition, Inc.*, 609 F. Supp. 2d 223, 227 (D. Conn.

2009) (considering documents integral to the complaint when no dispute existed regarding their

authenticity).  The Court believes it must reject these documents notwithstanding Plaintiffs'

reference to or selective reliance on them in their Amended Complaint because *Faulkner* makes

clear that even documents "integral" to a complaint cannot be considered if the record shows a

dispute regarding authenticity.[4]  *See Faulker*, 463 F.3d at 134; *see also Brown*, 2006 WL

---

[4]  The Court notes that Plaintiffs' objections appear less than genuine, especially
considering, as Defendants point out, that Plaintiffs object to the authenticity of even their own
Amended Complaint.  However, Plaintiffs consistently maintain in their Amended Complaint
that they did not sign the Note and Mortgage submitted by Defendants to the Court.  (Am.
Compl. ¶¶ 53, 56.)  Plaintiffs also allege that any purported assignment of a mortgage or note to
LaSalle was false and may have been recorded falsely by MERS.  (*Id.* ¶¶ 76-77, 82.)  However
untrue Defendants believe Plaintiffs' factual statements to be, the Court will not decide factual

3313821, at *22 (stating that the court could not accept all of the exhibits attached to the plaintiff's own complaint because the plaintiff objected to the authenticity of some of the attached documents).

In contrast, the Court is not required to accept Plaintiffs' objections to the authenticity of publicly filed documents subject to judicial notice because a court may take judicial notice of public records "as facts 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'"  *See Kramer*, 937 F.2d at 774 (quoting Fed. R. Evid. 201(b)(2)); *see also Roth*, 489 F.3d at 509 (stating that courts may consider judicially noticeable documents on a motion to dismiss because "no serious questions as to their authenticity can exist" (internal quotation marks and citation omitted)).  Thus, the Court will consider public documents, including the Form H-8 and the Orange County Clerk's Office recording page.[5] However, as explained above, the Court will only consider judicially noticed documents for what the documents state, not for the truth of the matters asserted.  *See Kramer*, 937 F.2d at 774.

B. Quiet Title Claim

Plaintiffs' first claim is for a decree quieting title, rescission of the loan, or "in the

_____

disputes regarding the authenticity of the Note, Mortgage, or other documents on a motion to dismiss.  Thus, while Plaintiffs' attempt to slalom their way through these documents may not be well-founded, and while Plaintiffs may face a rocky road in thwarting Defendants' inevitable summary judgment motion, the Court will apply *Faulkner* and decline to consider these documents at this time.

[5] The Court does not consider publicly filed documents submitted by Defendants that bear no relevance on this case.  In particular, Defendants submitted documents related to a separate matter before Judge Cathy Seibel, *Jose Barberan v. World Savings Bank, et al.*, No. 07-CV-8821 (S.D.N.Y.).  (Siev Decl. Exs. L, M, N, O.)  That matter has no relevance to this case; accordingly, these documents will not be considered.  *See Faulkner*, 463 F.3d at 134 (noting that it must "be clear that there exist no material disputed issues of fact regarding the relevance of [a] document" before it may be considered on a motion to dismiss).

alternative a money judgment in an amount sufficient to retire the alleged contract." (Am.

Compl. ¶ 94.)  In New York, "[t]he function of the equitable action to quiet title is now largely

replaced by the procedures under Real Property Actions and Proceedings Law Article 15"

("RPAPL Article 15").  2-24 Warren's Weed New York Real Property § 24.01; *see also W. 14th*

*St. Commercial Corp. v. 5 W. 14th Owners Corp.*, 815 F.2d 188, 196 (2d Cir. 1987) ("New York

has codified the common law action to quiet title and statutorily redefined the necessary elements

for a well-pleaded remaining cloud on title complaint.").  RPAPL Article 15 provides that "a

person [who] claims an estate or interest in real property . . . may maintain an action against any

other person . . . to compel the determination of any claim adverse to that of the plaintiff."  N.Y.

R.P.A.P.L. § 1501(1).  Although a statutory remedy exists, RPAPL Article 15 expressly states

that "nothing contained in [Article 15] shall be construed to limit any other remedy in law or

equity."  N.Y. R.P.A.P.L. § 1551.  Thus, Plaintiffs may choose to seek an equitable common law

action to quiet title despite the existence of the RPAPL statute, or they may bring both claims.

*See Meyer v. Wilcox*, 136 N.Y.S. 337, 337 (Sup. Ct. 1912) (noting that an equitable action to

remove a cloud on title "is quite apart from and not merged in the statutory action"); *see*

*generally* 2-24 Warren's Weed New York Real Property § 24.04.

Whether a quiet title action is commenced in equity or under RPAPL Article 15, the

result is almost the same — although RPAPL Article 15 is a statutory action, "it has been

described as a hybrid one in which the relief awarded is in large measure equitable in nature."

*See Dowd v. Ahr*, 563 N.Y.S.2d 917, 919 (App. Div. 1990), *rev'd on other grounds*, 583 N.E.2d

911 (N.Y. 1991); *see also Brooklyn LLC v. City of New York*, 840 N.Y.S.2d 692, 694 (Sup. Ct.

2007) (stating that RPAPL Article 15's "equitable characteristics derive from the common law

action to quiet title.").  A judgment issued pursuant to RPAPL Article 15 must "declare the validity of any claim . . . established by any party," and may direct that an instrument purporting to create an interest deemed invalid be cancelled or reformed.  N.Y. R.P.A.P.L. § 1521(1); *see also TEG NY LLC v. Ardenwood Estates, Inc.*, No. 03-CV-1721, 2004 WL 626802, at *4 (E.D.N.Y. Mar. 30, 2004) (noting that in "an [RPAPL] Article 15 action to compel the determination of a claim to real property" a court may determine the ownership interests in the property or reform a deed (quoting N.Y. R.P.A.P.L. § 1521(1)).  The judgment must "also declare that any party whose claim to an estate or interest in the property has been judged invalid, and every person claiming under him . . . be forever barred from asserting such claim . . . ."  N.Y. R.P.A.P.L. § 1521(1); *see also O'Brien v. Town of Huntington*, 884 N.Y.S.2d 446, 451 (App. Div. 2009) (declaring, pursuant to RPAPL Article 15, that "plaintiffs, and every person claiming under them, are forever barred from asserting such claim or interest the invalidity of which was established in this action.").  RPAPL Article 15 also allows Plaintiffs to seek "damages for the withholding" of the Property.  N.Y. R.P.A.P.L. § 1521(1); *see also Pierce v. Frost*, 743 N.Y.S.2d 642, 644 (App. Div. 2002) (remanding case brought pursuant to RPAPL Article 15 for determination of "compensatory damages, if any, based on defendants' wrongful interference with plaintiffs' prescriptive easement").

Even though equitable remedies available under the common law and under the statutory scheme are mostly the same, only actions brought pursuant to RPAPL Article 15 are triable by jury as of right.  *See* N.Y. C.P.L.R. § 4101(2); 2-24 Warren's Weed New York Real Property § 24.36.  New York courts have deemed claims seeking equitable quiet title relief to be pursuant to RPAPL Article 15, so long as the complaint adequately pleads a cause of action under the statute,

often to prevent a waiver of the jury trial right.  *See Decana Inc. v. Contogouris*, 846 N.Y.S.2d

20, 21 (App. Div. 2007) (finding that request for rescission was triable by jury under RPAPL

Article 15); *Washington Temple Church of God in Christ, Inc. v. Global Prop. & Assoc.*, No.

29690/05, 2007 WL 1558884, at *2 (Sup. Ct. May 31, 2007) (deeming plaintiff's cause of action

for declaratory judgment regarding rights to property based upon RPAPL Article 15); *Lillianfeld

v. Lichtenstein*, 694 N.Y.S.2d 600, 602 (Sup. Ct. 1999) (finding that claim for injunction and

declaratory judgment relating to easement, in which plaintiffs stated that they had no adequate

remedy at law, did not waive jury trial rights under RPAPL Article 15).

Construing Plaintiffs' pro se claims liberally, the Court deems Plaintiffs' claim to "quiet

title" as including a claim pursuant to RPAPL Article 15 to determine the rights of any claims

adverse to Plaintiffs' claims to the Property.[6]  As explained above, an RPAPL Article 15 action

can provide Plaintiffs with all of their requested "equitable" remedies, as well as monetary

damages, *see* N.Y. R.P.A.P.L. § 1521(1), and will ensure that these pro se Plaintiffs do not

inadvertently waive their right to a jury trial, *cf. Noto v. Headley*, 250 N.Y.S.2d 503, 504 (App.

---

[6] As noted, RPAPL Article 15 requires a complaint to "state that the action is brought
pursuant to this title," RPAPL § 1515(1), but several New York cases note that failure to do so is
not fatal.  *See, e.g.*, *Howard v. Murray*, 346 N.E.2d 238, 240 (N.Y. 1976) (concluding that
plaintiff's failure to refer to RPAPL Article 15 was "not a fatal defect" when the complaint "in
essence" alleged that plaintiffs were the owners of property to which defendants claimed or
might claim an adverse interest); *Meyer v. Stout*, 846 N.Y.S.2d 535, 536 (App. Div. 2007)
("[F]act that amended complaint [w]as not in technical compliance with the requirements of
RPAPL 1515 . . . [was] not a fatal defect" (internal quotation marks omitted)); *see also W. 14th
St. Commercial Corp.*, 815 F.2d at 196 n.1 ("Although [RPAPL] § 1515.1 provides that the
complaint must state that the action is brought pursuant to this article, the New York Court of
Appeals has held that the fact that the plaintiffs do not refer to the article or use the language of
the statute is not a fatal defect." (internal quotation marks, citations, and alteration omitted)).
Accordingly, Plaintiffs' failure to specify that the action is brought pursuant to RPAPL Article 15
is not fatal to their claim.

Div. 1964) (stating that although "[a]n action to determine title to real property is triable by jury under C.P.L.R. § 4101, plaintiff's request for specific performance waived his jury trial right).[7] Accordingly, the Court will analyze whether Plaintiffs have adequately stated a claim for either an equitable quiet title claim or a claim pursuant to RPAPL Article 15.

To maintain an equitable quiet title claim, a plaintiff must allege actual or constructive possession of the property and the existence of a removable "cloud" on the property, which is an apparent title, such as in a deed or other instrument, that is actually invalid or inoperative. *See* 90 N.Y. Jur. 2d Real Property, Possesory and Related Actions §§ 512, 516; *see also Piedra v. Vanover*, 579 N.Y.S.2d 675, 678 (App. Div. 1992) (noting that claim that fraudulent deed created a cloud on title "sound[ed] in equity, seeking equitable relief by way of the cancellation, as a cloud on title, of a purportedly forged deed"). A mortgage may constitute an invalid cloud on title. *See Residential Funding Corp. v. Epps*, No. 21077/08, 2009 WL 3210351, at *3 (Sup. Ct. Oct. 7, 2009) (noting that a mortgage that had "ceased to be a valid lien on the premises, [] may be canceled as a cloud on title"); *see also 3021 Corp. v. Napoli*, 49 N.Y.S.2d 399, 400-01 (Sup. Ct. 1944) (finding that plaintiff's claim that mortgage was not valid and that defendant was not the actual owner of the mortgage stated a claim to quiet title); *see generally* 90 N.Y. Jur. 2d Real Property, Possesory and Related Actions § 521.

---

[7] The injunctive relief sought by Plaintiffs, to enjoin Defendants from transferring mortgages or from maintaining foreclosure actions, is incidental to the remedies available under the statute, as an injunction will not be necessary if Plaintiffs are successful in their claim to establish superior title to the Property. *See Decana*, 846 N.Y.S.2d at 21 (stating that because plaintiff sought rescission of defendants' mortgages, injunctive relief seeking to prevent foreclosure proceedings was incidental to the rescission claim and would be unnecessary if plaintiffs prevailed); *Lillianfeld*, 694 N.Y.S.2d at 602 (finding that plaintiffs' claims for injunctions were "merely incidental to the relief sought pursuant to article 15 of the RPAPL").

Here, Plaintiffs allege that they are in actual possession of the Property.  (Am. Compl. ¶ 85.)  Plaintiffs further claim that the Mortgage and Note, documents that Defendants believe are valid on their face, are actually invalid clouds on Plaintiffs' title to the Property because Plaintiffs never signed these documents.  (*Id.* ¶¶ 53-54.)  Plaintiffs also allege that Defendants inserted false statements or fraudulently altered the mortgage documents (*id.* ¶¶ 60, 81), and that LaSalle's purported assignment is fraudulent, (*id.* ¶¶ 77, 82, 92).  Thus, Plaintiffs have alleged facts sufficient to establish a plausible equitable quiet title claim against Nationpoint, MERS, and LaSalle.

RPAPL Article 15 requires a complainant to adequately describe the property and to allege:  (I) the nature of the plaintiff's interest in the real property and the source of this interest; (ii) that the defendant claims or appears to claim an interest in the property adverse to the plaintiff's interest, and the nature of the defendant's interest; (iii) whether any defendant is known or unknown and whether any defendant is incompetent; and (iv) whether all interested parties are named and whether the judgment will or might affect other persons not ascertained at the commencement of the action.  N.Y. R.P.A.P.L. § 1515(1).  "Essential to the maintenance of an action to determine a claim to real property is that the complaint state a claim, by the defendant, of an estate or interest in the real property, adverse to that of the plaintiff."  *E. 41st St. Assocs. v. 18 E. 42nd St., L.P.*, 669 N.Y.S.2d 546, 548 (App. Div. 1998) (quoting RPAPL 1515(1)(b)) (emphasis omitted).  A plaintiff may bring a quiet title action against potential clouds on title.  *See Marchland v. N.Y. State Dept. of Envtl. Conservation*, 858 N.Y.S.2d 282, 283 (App. Div. 2008) (stating that "plaintiffs were entitled to commence an action to quiet title even if the [defendant] ha[d] yet to trespass or intrude" on the property).

Here, Plaintiffs have sufficiently stated a claim under RPAPL Article 15 against LaSalle. Plaintiffs adequately describe the Property, including its address.  (Am. Compl. ¶ 47.)  Plaintiffs also claim absolute ownership of the Property, describing their interest as "superior and legal title" to the Property.  (*Id.* ¶ 87.)  Plaintiffs further allege that LaSalle currently claims an interest in the Property adverse to their interest through the alleged mortgage, note, and assignment.  (*Id.* ¶ 38.)  Thus, Plaintiffs have adequately alleged facts supporting an RPAPL Article 15 claim against LaSalle.  *See Hurley v. Hurley*, 405 N.E.2d 229, 230-31 (N.Y. 1980) (finding allegations in complaint sufficient to state RPAPL Article 15 claim when plaintiffs described their purported easement and defendant's refusal to provide easement); *see also Harris v. Thompson*, No. 296152008, 2009 WL 2915312, at *5 (Sup. Ct. Sept. 10, 2009) (finding plaintiffs' allegations that assignor of mortgage to defendant was not a bona fide encumbrancer sufficient to state claim pursuant to RPAPL Article 15).

Although somewhat unclear, Plaintiffs also appear to assert that Nationpoint, or MERS as its nominee, may claim an interest in the Property adverse to their own interest by stating that "[n]one of the Defendants" are owners or holders of the Note (*id.* ¶ 78), that "[t]he Holder, or a previous holder, has discharged the Promissory Note by materially and fraudulently altering it, and/or cancelling and/or renouncing it" (*id.* ¶ 81), and that "the alleged Mortgage has never been assigned by the Lender," (*id.* ¶ 82).  Construing Plaintiffs' pro se Amended Complaint liberally, the Court finds that these claims adequately allege that Nationpoint and MERS may claim an interest in the Property on the theory that the mortgage and note were never assigned to LaSalle. However, because Plaintiffs have failed to allege any facts regarding HLS's interest in the Property, Plaintiffs have failed to sufficiently plead a quiet title or RPAPL Article 15 claim

against this Defendant. *See McGahey v. Topping*, 682 N.Y.S.2d 223, 224 (App. Div. 1998) (noting that parties, such as predecessors in title, "who claim no interest in the property are neither necessary nor proper parties to an action to quiet title"); *see also Berman v. Golden*, 515 N.Y.S.2d 859, 862 (App. Div. 1987) (granting summary judgment in quiet title action when defendant "claim[ed] no right, title or interest" in the properties at issue).

Defendants' arguments are not to the contrary. Defendants contend that Plaintiffs' claims must fail because the mortgage, note, and assignment are valid and enforceable. (Defs.' Mem. 8-10.) However, the fact that a plaintiff "executed the mortgage which he now seeks to remove as a cloud on title does not deprive him of the right to maintain [a quiet title] action." *Greenberg v. Schwartz*, 76 N.Y.S.2d 95, 96 (App. Div. 1948); *see also Cain v. Bethea*, No. 04-CV-3946, 2007 WL 2859681, at *10-12 (E.D.N.Y. Aug. 17, 2007), *adopted in part and rejected in part on other grounds*, No. 04-CV-3946, 2007 WL 2846914 (E.D.N.Y.) (finding material issues of fact and denying summary judgment claim in RPAPL Article 15 action in which plaintiff claimed she did not knowingly sign deed conveying her property because she believed the document was a refinancing); *Johnson v. Melnikoff*, 882 N.Y.S.2d 914, 915 (App. Div. 2009) (granting summary judgment to plaintiff who signed deed when plaintiff showed deed was obtained through false pretenses). Although, as explained above, the Court construes Plaintiffs' inartful pleadings as asserting that they entered into a mortgage and note, Plaintiffs consistently allege that any related documents were fraudulently altered by Defendants (Am. Compl. ¶¶ 60, 81), and that any subsequent assignment of the mortgage to LaSalle was false, (*id.* ¶¶ 77, 82). However weak Defendants believe Plaintiffs' factual claims regarding the enforceability of the mortgage, the note, and the assignment to be, the Court will not decide which Party's claims are stronger on a

19

motion to dismiss.  *See Hurley*, 405 N.E.2d at 231 (noting that resolving, at the motion to dismiss

stage, whether plaintiffs had title to easement in case brought pursuant to RPAPL Article 15

would improperly "resolve the issue on the merits adversely to plaintiffs without their having had

an opportunity to prove their case"); *see also Sunshine v. Danbury*, 581 N.Y.S.2d 476, 478 (App.

Div. 1993) (denying motion to dismiss in an RPAPL Article 15 action where plaintiffs alleged

that they owned property through adverse possession); *Gifford v. Whittemore*, 165 N.Y.S.2d 201,

207 (App. Div. 1957) (stating that "it is unnecessary and inappropriate to go into the merits" of

plaintiff's RPAPL Article 15 claim on a motion to dismiss and that the complaint should not be

dismissed "upon the ground that the plaintiff is not entitled to the determination which he

seeks"); *3021 Corp.*, 49 N.Y.S.2d at 400 (finding that plaintiff's factual allegation that

defendant's mortgage was not valid and was acquired surreptitiously was sufficient to state a

claim for quieting title).

Accordingly, Defendants' Motion to Dismiss is denied as to LaSalle, Nationpoint, and

MERS, but is granted as to HLS.

### C. TILA Claim

Plaintiffs claim that all Defendants violated TILA, 15 U.S.C. § 1601 *et seq.*, by failing to

provide required disclosures (Am. Compl. ¶ 63), and seek monetary damages (*id.* ¶ 99), and

rescission, (*id.* ¶ 3).  TILA was enacted by Congress "to assure a meaningful disclosure of credit

terms" to consumers.  *See* 15 U.S.C. § 1601; *see also Beach v. Ocwen Fed. Bank*, 523 U.S. 410,

412 (1998); *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 559 (1980).  "Consistent with its

purpose, TILA is meant to be construed liberally in favor of the consumer."  *Schnall v. Marine*

*Midland Bank*, 225 F.3d 263, 267 (2d Cir. 2000) (internal quotation marks and alteration

omitted).  "Congress has specifically designated the Federal Reserve Board . . . as the primary

source for interpretation and application of [TILA]."  *Milhollin*, 444 U.S. at 566 (alteration in

original).

    Under TILA, consumers entering certain credit transactions involving security interests in

their principal dwelling have a right to rescind the transaction until midnight on the third business

day after the credit transaction, delivery of the rescission notice, or delivery of all material

disclosures, whichever is latest.  *See* 15 U.S.C. § 1635(a).  Creditors must supply a rescission

notice "clearly and conspicuously" disclosing the security interest in the principle dwelling, the

right to rescind, how to exercise rescission (with a form to exercise rescission designating the

creditor's address), the effects of rescission, and the expiration date of rescission.  *See id.*; 12

C.F.R. § 226.23(b)(1); *see also Aubin v. Residential Funding Co., LLC*, 565 F. Supp. 2d 392, 394-

95 (D. Conn. 2008) (noting that lenders must send clear and conspicuous disclosures regarding

consumer's right to rescind, including the date the rescission period expires, and that if such

disclosures are not made, the rescission period may be extended to three years); *Fiorenza v.*

*Fremont Inv. & Loan*, No. 08-CV-858, 2008 WL 2517139, at *3 (S.D.N.Y. June 20, 2008) ("If

the creditor fails to deliver the . . . notice of the right to rescind, section 1635(f) of TILA extends

the right of rescission for three years after the date of consummation of the transaction . . . .").

"To satisfy the disclosure requirements . . . the creditor shall provide the appropriate model form .

. . or a substantially similar notice."  12 C.F.R. § 226.23(b)(2).  Saturday is considered a business

day for purposes of rescission.  12 C.F.R. § 226.2(a)(6).

    "Creditors who do not comply with the mandated duty to disclose are subject to civil

liability."  *Fiorenza*, 2008 WL 2517139, at *3; *see also* 15 U.S.C. § 1640(a).  "The court need

find 'only a single violation of the statutory requirements to hold [a] defendant liable under TILA." *Clement v. Am. Honda Fin. Corp.*, 145 F. Supp. 2d 206, 210 (D. Conn. 2001) (quoting *Griggs v. Provident Consumer Disc. Co.*, 503 F. Supp. 246, 250 (E.D. Pa. 1980). A "creditor" is defined as a person who "regularly extends consumer credit," and "is the person to whom the debt arising from the consumer credit transaction is initially payable." 15 U.S.C. § 1602(f); *see also* 12 C.F.R. § 226.2 ("Creditor means: (I) [a] person (A) who regularly extends consumer credit that is subject to a finance charge or is payable by written agreement in more than 4 installments . . ., and (B) to whom the obligation is initially payable . . . . (footnote omitted)). Under TILA, a plaintiff may be entitled to statutory damages and a statutory right to rescind the transaction. *See Fiorenza*, 2008 WL 2517139, at *3.[8] Assignees may be liable "only if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement," 15 U.S.C. § 1641(a), but the right to rescind a transaction under § 1635 may be brought against any assignee, 15 U.S.C. § 1641©; *see also Mayfield v. Gen. Elec. Capital Corp.*, No. 97-CV-2786, 1999 WL 182586, at *6 (S.D.N.Y. Mar. 31, 1999) ("A consumer's right to rescind under TILA may be exercised against assignees." (internal citation omitted)). Generally, claims under TILA must be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). However, "[i]f the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation . . . ." 12 C.F.R § 226.23(a)(3).

Here, Plaintiffs admit that they received the NRCs, contending only that the rescission disclosure notice was inadequate. (Am. Compl. ¶¶ 64-69.) Plaintiffs assert that the NRCs

---

[8] A borrower exercising the right of rescission "is not liable for any finance or other charge, and any security interest given by the obligor . . . becomes void upon such rescission." 15 U.S.C. § 1635(b).

provided the incorrect rescission expiration date (*id.* ¶ 69), did not match the model notice form (*id.* ¶ 65), and were generally misleading and ambiguous, (*id.* ¶¶ 67-68).  Accepting these facts as true, as the Court must, Plaintiffs have sufficiently alleged a TILA violation.  First, the failure to provide the correct rescission expiration date, if proven, would alone support a claim for violation of the notice requirements, triggering the three-year rescission time limit.  *See* 12 C.F.R. § 226.23(b)(1); *see also Jackson v. Grant*, 890 F.2d 118, 120, 122 (9th Cir. 1989) (stating that the "notice of the right to rescind must specify the date the rescission period expires" and allowing three-year rescission period when the plaintiff "received no notice of her TILA cancellation right and the expiration date"); *Williams v. Aries Fin., LLC*, 09-CV-1816, 2009 WL 3851675, at *5 (E.D.N.Y. Nov. 18, 2009) (denying motion to dismiss TILA claim when plaintiff pled, inter alia, that defendants failed to provide the correct expiration date).  Moreover, Plaintiffs also allege that the NRC contained language that was ambiguous and misleading, and that the NRCs did not comport with the model notice form, facts that raise a plausible claim that the notice did not "clearly and conspicuously" provide the required information.  *See* 15 U.S.C. § 1635(a); *see also Williams*, 2009 WL 3851675, at *5 (stating that plaintiff sufficiently pleaded a TILA claim by stating, inter alia, that defendants "fail[ed] to provide [the] required disclosures clearly and conspicuously in writing").

Plaintiffs properly bring their TILA claims against Nationpoint and MERS as "creditors." The Court construes Plaintiffs' characterization of Nationpoint as "the Lender" (*id.* ¶ 9) to mean that Nationpoint was the entity to which the loan was initially payable.  The Court also construes Plaintiffs' statements that MERS had "contracts" with Defendants (*id.* ¶ 30), and that MERS was "acting as nominee" (*id.* ¶ 31), to mean that MERS was the nominee of Nationpoint.  This makes

MERS a creditor under TILA.  *See Johnson v. Scala*, 05-CV-5529, 2007 WL 2852758, at *1, *3

(S.D.N.Y. Oct. 1, 2007) (stating that MERS, which was the nominee of the creditor, was a

creditor for purposes of TILA).  The rescission claim is also properly brought against LaSalle, as

the purported assignee of the loan.  *See* 15 U.S.C. § 1641©; *see also Williams*, 2009 WL

3851675, at *7 ("[T]he consumer has a right to rescind against any assignee, regardless of whether

the violation was apparent on the face of the disclosure.").  Furthermore, Plaintiffs state a claim

for damages against LaSalle as an assignee because they allege that the expiration date was

incorrect, and, therefore, that the NRC was invalid on its face.  *See Aldrich v. Upstate Auto*

*Wholesale of Ithaca, Inc.*, 564 F. Supp. 390, 394-95 (N.D.N.Y. 1982) (holding assignee bank

liable for TILA disclosure violation that was apparent from the face of the disclosure).  However,

Plaintiffs do not raise a plausible claim for TILA rescission or damages against HLS.  The only

allegations in the Amended Complaint regarding HLS are that HLS is a foreign corporation not

registered to do business in New York (Am. Compl. ¶¶ 41-42), that it is a subsidiary of Fidelity

National Information Services, Inc. that does business under the name First Franklin Loan

Services (*id.* ¶¶ 43-45), that it "did not credit all payments to Plaintiffs' account" (*id.* ¶ 84), and

that it was responsible for making false statements to credit bureaus, (*id.* ¶¶ 117-30).  Because

none of these facts allege that HLS was a party to or an assignee of Plaintiffs' loan, Plaintiffs have

failed to plead facts supporting the existence of creditor or assignee liability against HLS.  *See*

*Ianuzzi v. Washington Mutual Bank*, No. 07-CV-964, 2008 WL 3978189, at *8 (E.D.N.Y. Aug.

21, 2008) (dismissing TILA claim against mortgage broker because there was no allegation that

broker was a party to the loan or acted as a creditor); *Blaize-Sampeur v. McDowell*, No.

05-CV-4275, 2006 WL 3903957, at *3 n.4 (E.D.N.Y. Oct. 18, 2005) (holding that plaintiff could

not bring TILA claim against loan servicer); *Burns v. Bank of Am.*, No. 03-CV-1685, 2003 WL

22990065, at *2-3 (S.D.N.Y. Dec. 18, 2003) (dismissing TILA claim against defendant when

plaintiff failed to allege creditor or assignee liability and when plaintiff also alleged that defendant

failed to accurately report information to credit agencies), *vacated and remanded on other*

*grounds*, 115 Fed. Appx. 105 (2d Cir. 2004) (unpublished).

      Accordingly, Defendants' Motion to Dismiss the TILA violation claim is denied as to

Nationpoint, MERS, and LaSalle, but is granted as to HLS.

      D. Breach of Contract Claims

      Although Plaintiffs generally deny the existence and validity of the Mortgage and Note,

they simultaneously allege that enforceable contracts existed, "consisting of a mortgage, Pooling

and Servicing Agreement, Subservicing Agreement, [and] other document(s)," which were

breached by Defendants.[9]  (*Id.* ¶ 103.)

      The Parties appear to agree that New York law governs the contracts at issue.  (Am.

Compl. ¶ 102; Defs.' Mem. 12); *see Postlewaite v. McGraw-Hill, Inc.*, 411 F.3d 63, 67 (2d Cir.

2005) (applying New York law where "the parties do not dispute that New York law applies").

Under New York state law, the elements of a breach of contract claim are:  (1) the existence of a

contract; (2) performance of the contract by one party; (3) breach by the other party; and (4)

---

     [9] As noted, the Court has construed Plaintiffs pleadings to allege that Plaintiffs entered
into a mortgage with Nationpoint.  Despite the confusion, Plaintiffs have consistently maintained
that the mortgage documents were fraudulently altered by Defendants.  (Am. Compl. ¶¶ 60, 81.)
Accordingly, Plaintiffs may plead in the alternative that the mortgage documents are invalid
because they were fraudulently altered, but if valid contracts existed, Defendants have breached
those contracts.  *See* Fed. R. Civ. P. 8(e)(2); *Henry v. Daytop Village, Inc.*, 42 F.3d 89, 95 (2d
Cir.1994) (noting that a party may "plead two or more statements of a claim, even within the
same count, regardless of consistency.").

damages.  *See Terwilliger v. Terwilliger*, 206 F.3d 240, 245-46 (2d Cir. 2000); *Kramer v. Lockwood Pension Servs., Inc.*, 653 F. Supp. 2d 354, 386 (S.D.N.Y. 2009).

### 1. Breach of Mortgage

"A mortgage is merely security for a debt or other obligation and cannot exist independently of the debt or obligation." *FGB Realty Advisors, Inc. v. Parisi*, 696 N.Y.S.2d 207, 208 (App. Div. 1999); *see also Wyoming County Bank & Trust Co. v. Kiley*, 430 N.Y.S.2d 900, 902 (App. Div. 1980) ("The note represents the primary personal obligation of the mortgagor while the mortgage is merely the security for such obligation.").  A mortgage agreement must be supported by a valid underlying obligation, which is often referred to as the valid consideration for the mortgage.  *See Coronet Capital Co. v. Spodek*, 696 N.Y.S.2d 191, 192 (App. Div. 1999) ("It has long been held that a mortgage is not valid and enforceable unless there is an underlying valid debt or obligation for which the mortgage is intended as security."); *First Am. Bank of N.Y. v. Sloane*, 651 N.Y.S.2d 734, 735 (App. Div. 1997) ("[I]n order to be enforceable as a lien on real property, the mortgage must be supported by valid consideration . . . .").

Plaintiffs first assert that Nationpoint breached "the agreement" because the "terms of the agreement called for Defendant to make a loan" and "Defendant did not make a loan."  (*Id.* ¶¶ 109-110.)  However, Plaintiffs blatantly contradict this factual assertion by simultaneously stating that they "kept the loan paid current, up until they rescinded it."  (*Id.* ¶ 70.)  As explained above, although the Court accepts Plaintiffs' factual allegations as true, the Court is not required to accept as true pleadings that are directly contradicted by other factual statements in the Amended Complaint.  *See In re Livent*, 151 F. Supp. 2d at 405; *see also Deronette v. City of New York*, No. 05-CV-5275, 2007 WL 951925, at *2 (E.D.N.Y. Mar. 27, 2007) ("[A] court need not feel

constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted [] by statements in the complaint itself . . . ." (quoting *In re Livent*, 151 F. Supp. 2d at 405) (alteration in original)).  Accordingly, Plaintiffs' factual assertion that Defendants failed to make a loan is mutually exclusive of Plaintiffs' factual assertion that they repaid the loan.  It is simply not plausible that Plaintiffs would repay a loan that Defendants did not provide.  Thus, Plaintiffs have failed to make out a plausible breach of contract claim when they admit that Defendants provided the loan.  *See Meadowlands Invs., LLC v. CIBC World Markets Corp.*, No. 04-CV-7328, 2005 WL 2347856, at *4-5 (S.D.N.Y. Sept. 22, 2005) (granting motion to dismiss when plaintiff's factual pleadings undermined any claim that the defendant's conduct breached the contract); *see also Kinsey v. Cendant Corp.*, No. 04-CV-0582, 2004 WL 2591946, at *8 (S.D.N.Y. Nov. 16, 2004) (dismissing plaintiff's securities fraud claim and rejecting allegation that plaintiff's stock options were not automatically converted under stock option plan as inconsistent with plaintiff's allegation that his stock options were automatically converted under the plan); *In re Musicland Holding Corp.*, 398 B.R. 761, 782 (Bankr. S.D.N.Y. 2008) (dismissing claim for rescission based on mistake when "[t]he claim of mistake [was] directly contradicted by other allegations in the" complaint, such as allegations showing that plaintiff understood the nature of the transaction).

Similarly, Plaintiffs' assertion that the mortgage was unconscionable because it "called for performance by Plaintiffs, but did not call for any performance by Defendant" (Am. Compl. ¶¶ 107-08), is directly contradicted by their own factual assertions.  This appears to be an argument that the mortgage was not supported by valid consideration.  As discussed above, Plaintiffs admit that Defendants were required to make a loan under the agreement.  (*Id.* ¶¶ 109-110).  Plaintiffs

have, therefore, admitted that the mortgage was supported by valid consideration — the underlying loan.  *See Hathaway v. Tompkins*, 794 N.Y.S.2d 899, 900 (Sup. Ct. 2005) (finding mortgage supported by valid consideration when bank lent monies to defendants and when defendants gave a security mortgage to assure repayment of that debt).

   ## 2. Breach of Pooling and Servicing Agreement, Subservicing Agreement, and Other Contracts

   Plaintiffs also appear to allege a breach of contract claim based on a "Pooling and Servicing Agreement, Subservicing Agreement, [and on] other document(s)."  (Am. Compl. ¶ 103).  Plaintiffs also allege that the Pooling and Servicing Agreement was among Merrill Lynch Mortgage Investors, Inc., LaSalle, and HLS.  (*Id.* ¶ 104).  Plaintiffs then allege that they are beneficiaries "or are otherwise directly or indirectly party to the Pooling and Servicing Agreement, Subservicing Agreement, and other contract(s)."  (*Id.* ¶ 105.)  First, Plaintiffs plead no facts to support their bare legal conclusion that they are beneficiaries or parties to these agreements.  *See First Nationwide Bank*, 27 F.3d at 771 (noting that mere "conclusions of law or unwarranted deductions" need not be accepted by the court); *Alessi v. Monroe County*, No. 07-CV-6163, 2010 WL 161488, at *2 (W.D.N.Y. Jan. 13, 2010) (same).[10] Second, even accepting

   _____

   [10] Plaintiffs have failed to raise a plausible claim that they were parties to or third-party beneficiaries of the contracts.  "A party asserting rights as a third-party beneficiary must establish (1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for his benefit and (3) that the benefit to him is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty" to the nonparty.  *State of Cal. Pub. Employees' Ret. Sys. v. Shearman & Sterling*, 741 N.E.2d 101, 104 (N.Y. 2000); *Nanopierce Techs., Inc. v. Southridge Capital Mgt. LLC*, No. 02-CV-0767, 2004 WL 2754653, at *12 (S.D.N.Y. Dec. 2, 2004) (same).  To be an intended beneficiary, "'the circumstances [must] indicate that the promisee intends to give the beneficiary the benefit of the promised performance' or that the promised performance is to be made directly to that party."  *Solutia Inc. v. FMC Corp.*, 385 F. Supp. 2d 324, 337 (S.D.N.Y. 2005) (quoting *Fourth Ocean Putnam v. Interstate Wrecking Co.*, 485 N.E.2d 208, 212 (N.Y. 1985) (alteration in original).  "The

as true Plaintiffs' tenuous legal conclusions, Plaintiffs have failed to assert any terms of these

contracts or any conduct of Defendants that might constitute a breach of those terms.  *See Dover*

*Ltd. v. A.B. Watley, Inc.*, 423 F. Supp. 2d 303, 329  (S.D.N.Y. 2006) (granting motion to dismiss

when "[p]laintiffs h[ad] not established that [the defendant] breached any of the terms of its

written contract with the [p]laintiffs"); *see also Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 202

(S.D.N.Y. 2008) ("Stating in a conclusory manner that an agreement was breached does not

sustain a claim of breach of contract.")

      Accordingly, Defendants' Motion to Dismiss the breach of contract claims is granted.

      <u>E. Preemption of State Law Tort Claims by Fair Credit Reporting Act</u>

      Plaintiffs allege that Defendant HLS was negligent or breached a fiduciary duty to

Plaintiffs by making false statements or failing to make true statements to credit bureaus.  (Am.

Compl. ¶¶ 117-25.)  Plaintiffs also allege that Defendants LaSalle and HLS improperly reported to

credit bureaus that a foreclosure process had been initiated against Plaintiffs.  (*Id.* ¶¶ 126-30.)  As

a result, according to Plaintiffs, some of Plaintiffs credit cards were cancelled, Plaintiffs' credit

limit was decreased, Plaintiffs' credit was damaged (*id.* ¶¶ 123, 128), and Plaintiffs faced a

---

obligation to perform to the third party beneficiary need not be expressly stated in the contract,
since . . . it is permissible for the court to look at the surrounding circumstances as well as of the
agreement."  *Fishbein v. Miranda*, 06-CV-13222, 2009 WL 3849676, at *6 (S.D.N.Y. Nov. 16,
2009)  Here, Plaintiffs' contradictory factual allegations fail to show that they were parties to the
Pooling and Servicing Agreement — Plaintiffs state that they entered into the Pooling and
Servicing Agreement (Am. Compl. ¶ 103), but then assert that the Pooling and Servicing
Agreement was only among Merrill Lynch, LaSalle, and HLS, (*id.* ¶ 104).  Nor have Plaintiffs
asserted *any* facts showing that they are parties to any of the alleged contracts, that they received
a benefit from the contracts, or that there was an intention of the parties to benefit Plaintiffs.  *See
Travelers Cas. & Sur. Co. v. Dormitory Auth.*, 07-CV-6915, 2008 WL 1882714, at *5 (S.D.N.Y.
Apr. 25, 2008) (granting motion to dismiss when plaintiffs failed to allege any contract terms
providing them a benefit because "there [wa]s simply no basis in the pleading" to support an
intended beneficiary theory).

wrongful foreclosure action, (*id.* ¶ 130).  On December 21, 2009, the Court ordered all Parties to submit supplemental briefing regarding preemption under the FCRA.  (Dkt. No. 55.)  All Parties timely submitted a supplemental brief on January 4, 2010.  (Dkt. Nos. 56, 58.)

In evaluating statutory preemption provisions, courts begin the "analysis with the assumption that the historic police powers of the States are not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress."  *Altria Group, Inc. v. Good*, 129 S. Ct. 538, 543 (2008) (internal quotation marks omitted); *see also Premium Mortgage Corp. v. Equifax, Inc.*, 583 F.3d 103, 106 (2d Cir. 2009) (per curium).  "However, since the existence of preemption turns on Congress's intent," the Court begins by analyzing "the text of the provision in question, and move[s] on, as need be, to the structure and purpose of the Act in which it occurs."  *Premium Mortgage*, 583 F.3d at 106 (internal quotation marks and alteration omitted).

Section 1681s-2 of the FCRA imposes duties upon furnishers of information to credit reporting agencies.[11]  *See* 15 U.S.C. § 1681s-2.  Specifically, for example, § 1681s-2(a) states that persons "shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate."  15 U.S.C. § 1681s-2(a)(1)(A).  Section 1681s-2(a) also prohibits furnishing inaccurate information after notification of the inaccuracy, and imposes specific duties on furnishers of information, such as a duty to correct and update information and to provide notice of disputes.  15 U.S.C. § 1681s-2(a)(1)(B), (a)(2)-(9); *see also Kane*, 2005 WL 1153623, at *3 (noting that §

---

[11] The term "furnishers of information" is not defined in the statute, *see* 15 U.S.C. § 1681a, but it has been interpreted to mean "entities that transmit, to credit reporting agencies, information relating to debts owed by consumers," *Kane v. Guaranty Residential Lending, Inc.*, No. 04-CV-4847, 2005 WL 1153623, at *3 (S.D.N.Y. May 16, 2005).  Here, Plaintiffs allege that HLS, LaSalle, and Nationpoint acted as furnishers of information to credit reporting agencies.

1681s-2(a) "forbids providing any information to a credit reporting agency if the furnisher . . . is informed by the consumer that the information is inaccurate" and requires a "person [who] learns that any reported information is inaccurate" to "notify the credit reporting agency of the inaccuracies . . . and to provide corrections for any incomplete or inaccurate information").  No private right of action exists for violations of § 1681s-2(a) because this provision "shall be enforced exclusively" by government officials.  *See* 15 U.S.C. § 1681s-2(d); *see also Fashakin v. Nextel Commc'ns*, No. 05-CV-3080, 2006 WL 1875341, at *4 (E.D.N.Y. July 5, 2006) ("[T]here is no private right of action under section 1681s-2(a)" (internal quotation marks and alteration omitted)); *Kane*, 2005 WL 1153623, at *4 ("It is by now well established that an individual consumer may not bring a cause of action for the violation of Section 1681s-2(a) . . . .").  Accordingly, although Plaintiffs claim that Defendants inaccurately reported information to credit agencies, Plaintiffs may not bring a private right of action under § 1681s-2(a).[12]

The FCRA contains two provisions arguably relating to preemption of state tort claims brought against furnishers of credit information.  The first provision, § 1681h(e) provides:

_____

[12] Another provision of § 1681s-2 allows private rights of action under certain circumstances, none of which are applicable here.  For example, § 1681s-2(b) imposes duties on furnishers of credit information to investigate and report alleged inaccuracies in credit information the furnisher provided, after the furnisher receives notice from a credit agency of a consumer dispute.  *See* 15 U.S.C. §§ 1681i(a)(2), 1681s-2(b).  Plaintiffs may bring private actions for willful or negligent noncompliance with § 1681s-2(b).  *See* 15 U.S.C. § 1681(n)-(o).  However, "unless and until a furnisher of information receives notice from a *credit reporting agency*, no private right of action exists under [§] 1681s-2(b)."  *Kane*, 2005 WL 1153623, at *5 (emphasis added).  Because Plaintiffs have not alleged any facts regarding a credit reporting agency notifying Defendants of Plaintiffs' dispute with the credit reporting, the Court cannot construe Plaintiffs' pleading as asserting a valid cause of action for violations of subsection 1681s-2(b).  *See id.* (finding "that plaintiffs [] failed to allege any violation of section 1681s-2(b)" when plaintiffs did not allege that the defendant "received notice of the dispute from any credit reporting agency").

> Except as provided in sections 1681n and 1681o of this title, no consumer may
> bring any action or proceeding in the nature of defamation, invasion of privacy, or
> negligence with respect to the reporting of information against . . . any person who
> furnishes information to a consumer reporting agency, based on information
> disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on
> information disclosed by a user of a consumer report to or for a consumer against
> whom the user has taken adverse action, based in whole or in part on the report
> except as to false information furnished with malice or willful intent to injure such
> consumer.

15 U.S.C. § 1681(h)(e).  The second provision relates to the duties of furnishers of information

regulated by § 1681s-2, stating that "no requirement or prohibition may be imposed under the

laws of any State . . . with respect to any subject matter regulated under . . . section 1681s-2 . . .

relating to the responsibilities of persons who furnish information to consumer reporting

agencies."  15 U.S.C. § 1681t(b)(1)(F).  Two specific state statutes, neither of which are

applicable here, are exempted from preemption under § 1681t(b)(1)(F).[13]  *Id.*  District courts have

long struggled to reconcile an apparent conflict between the two preemption provisions — the

potential for total preemption of statutory and common law claims under § 1681t(b)(1)(F) and the

explicit allowance of certain common law claims under § 1681h(e).  *See, e.g.*, *Islam v. Option

One Mortgage Corp.*, 432 F. Supp. 2d 181, 190 (D. Mass. 2006) (stating that reconciling the more

specific provision of § 1681h(e) with the "general preemption provision of section 1681t(b) has

vexed district courts nationwide since [s]ection 1681t(b) was added to the code in 1996"); *Kane*,

2005 WL 1153623, at *6 ("Determining whether plaintiffs can proceed with any common law

claims requires examining the two overlapping and potentially contradictory preemption

---

[13] Section 1681t(b)(1)(F) exempts § 54A(a) of chapter 93 of the Massachusetts Annotated
Laws, M.G.A.L. 93 § 54A(a), and § 1785.25(a) of the California Civil Code, Cal. Civ. Code §
1785.25(a), which also prohibit furnishing inaccurate information to credit reporting agencies.

provisions . . . ." (internal quotation marks omitted)).[14]

In *Premium Mortgage*, the Second Circuit recently analyzed a parallel preemption provision of § 1681t(b)(1), which states that "no requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under . . . subsection © or (e) of section 1681b . . . relating to the prescreening of consumer reports . . . ." 583 F.3d at 106 (quoting 15 U.S.C. § 1681t(b)(1)(A)).  The plaintiffs in *Premium Mortgage* brought nine state law claims against credit reporting agencies regarding the defendants' alleged practice of permitting lenders to purchase pre-screened consumer reports.  *Id.* at 102.  The Second Circuit found that the defendants' conduct fell within the subject matter regulated by subsections © and (e) of § 1681b, which regulate the furnishing of consumer reports.  *Id.* at 106.  As a result, the court held that plaintiffs state law claims were preempted by 1681t(b)(1)(A), explaining that

---

[14] Courts have generally adopted three main approaches to reconciling this perceived conflict:  a "total preemption" approach; a "temporal" approach; and a "statutory" approach. Under the total preemption approach, "all state causes of action against furnishers of information are deemed preempted by the sweeping language of § 1681t(b)(1)(F)."  *Kane*, 2005 WL 1153623, at *7 (emphasis omitted); *see also Holtman v. Citifinancial Mortgage Co.*, No. 05-CV-1571, 2006 WL 1699589, at *3 (D. Conn. June 19, 2006) ("As a threshold matter, this court finds that 'under the laws of any state' in this section refers to the statutory and common law of a state.").  "Under the temporal approach, state law claims based on actions of furnishers of information after the furnisher has received notice of inaccuracies are held preempted by § 1681t(b)(1)(F)," but actions taken before notice has been received are not preempted by § 1681t(b)(1)(F) and are governed solely by § 1681h(e).  *Kane*, 2005 WL 1153623, at *8.  Thus, under the temporal approach, a plaintiff may bring a common law state claim if it relates to actions taken by a furnisher of information before it received notice and if the furnisher took action with malice or willful intent to injure.  *See id.*; *see also Prakash v. Homecomings Fin.*, No. 05-CV-2895, 2006 WL 2570900, at *5 (E.D.N.Y. Sept. 5, 2006) (adopting temporal approach). Finally, under the statutory approach, courts have held that only state statutes are preempted by § 1681t(b)(1)(F), "while section 1681h(e) — and its malice requirement — applies to state common law torts."  *Kane*, 2005 WL 1153623, at *8; *see also Manno v. Am. Gen. Fin. Co.*, 439 F. Supp. 2d 418, 429 (E.D. Pa. 2006) (adopting statutory approach).  As discussed below, the Second Circuit has yet to reconcile the conflict, and this Court need not do so in this case.

"[t]he phrase 'no requirement or prohibition' sweeps broadly and suggests no distinction between positive enactments and common law; to the contrary, those words easily encompass obligations that take the form of common-law rules." *Id.* (internal quotation marks and alteration omitted); *see also Riegel v. Medtronic, Inc.*, 552 U.S. 312, 324 (2008) ("Absent other indication, reference to a State's 'requirements' includes its common-law duties."); *Cippolone v. Liggett Group, Inc.*, 505 U.S. 504, 521 (1992) (plurality opinion) (finding that the plain meaning of the phrase "[n]o requirement or prohibition" in the Federal Cigarette Labeling and Advertising Act preempted state common law claims).[15]

Here, Plaintiffs claim that HLS "furnishes information to credit reporting agencies" (Am. Compl. ¶ 117), and assert state tort claims of breach of fiduciary duty and negligence based on HLS allegedly making "false statements to credit bureaus" and "neglect[ing] to make true statements to credit bureaus." (*Id.* ¶¶ 121-22.)  Plaintiffs also assert a claim for "wrongful foreclosure" against HLS and LaSalle based on those entities reporting "[f]oreclosure process started" to credit bureaus. (*Id.* ¶ 127.)  Although it is unclear exactly what legal theory Plaintiffs' "wrongful foreclosure" claim asserts, it appears to be a tort claim in the nature of slander of title or defamation. *See Markowitz v. Republic Nat'l Bank of N.Y.*, 651 F.2d 825, 827-28 (2d Cir. 1981) (finding that, under New Jersey law, plaintiffs' claim that defendant wrongfully claimed a lien under a mortgage "must be construed as one for slander of title"); *see also Gaft v. Mitsubishi Motor Credit of Am.*, No. 07-CV-527, 2009 WL 3148764, at *1, *11 (E.D.N.Y. Sept. 29, 2009) (analyzing slander of title claim based on allegation that defendant allegedly wrongly informed

---

[15] In *Premium Mortgage*, the Second Circuit noted that it did not resolve, because it did not have to, "any perceived conflict between" § 1681(h)(e) and § 1681t(b)(1)(F).  583 F.3d at 106 n.2.

credit reporting agencies that the defendant had extended loans to plaintiff); *Ferber v. Citicorp*

*Mortgage, Inc.*, No. 94-CV-3038, 1996 WL 46874, at *2 (S.D.N.Y. Feb. 6, 1996) (noting that

plaintiffs' defamation claim was based on defendant reporting to credit agencies that plaintiffs had

defaulted on their loans and that foreclosure proceedings had been commenced).

As pled, Plaintiffs' tort claims fall squarely within the subject matter regulated under §

1681s-2, which governs the furnishing of information to credit agencies.  *See* 15 U.S.C. § 1681s-

2; *see also Holtman*, 2006 WL 1699589, at *3 (noting that mortgagee's alleged inaccurate

reporting to credit agencies of plaintiffs' late mortgage payments fell "squarely within the scope

of section 1681s-2").  As a result, Plaintiffs' state common law claims are preempted by §

1681t(b)(1)(F) because, as the Second Circuit explained in *Premium Mortgage*, preemption of any

state law "requirement or prohibition" includes both statutory and common law claims.  *See*

*Premium Mortgage*, 583 F.3d at 106; *see also Howard v. Mun. Credit Union*, No. 05-CV-7488,

2008 WL 782760, at *9 (S.D.N.Y. Mar. 25, 2008) (finding state tort claims preempted when §

1681t(b)(1)(F) "expressly provides that a State may not impose its own requirements or

prohibitions" regarding matters regulated by § 1681s-2); *Islam*, 432 F. Supp. 2d at 194 (finding

that § 1681t(b)(1)(F) preempted plaintiffs' negligence claim against mortgagee for inaccurate

reporting to credit agencies because the statute's "explicit terms preempt all state-law claims"

regarding § 1681s-2); *Holtman*, 2006 WL 1699589, at *3 (holding that defamation claim for

inaccurate reports to credit agencies was preempted by § 1681t(1)(F) because the phrase "'under

the laws of any state' . . . refers to the statutory and common law of a state").[16]

_____

[16] Because Plaintiffs' tort claims are preempted by the plain language of § 1681t(b)(1)(F),
the perceived conflict between § 1681t(b)(1)(F) and § 1681h(e) is not at issue here.  In any event,
§ 1681h(e) does not apply to this case.  The plain language of § 1681h(e) states that it applies to

reporting of information "*based on* information disclosed pursuant to sections 1681g, 1681h, or 1681m . . . or *based on* information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, *based* in whole or in part on the report." *See* 15 U.S.C. § 1681h(e) (emphasis added). Thus, § 1681h(e) applies only to those who report information "based on" one of the specific categories of information listed. *See Leet v. Cellco P'ship*, 480 F. Supp. 2d 422, 430 (D. Mass. 2007) (noting that "§ 1681h(e) is not even implicated unless the cause of action is based on information disclosed pursuant" to the listed statutory provisions or circumstances (internal quotation marks omitted)); *see also Holtman*, 2006 WL 1699589, at *4 (noting that § 1681h(e) applies "just to . . . those who take adverse actions against consumers based on consumer reports"); Mark H. Tyson, *State Law Furnisher Liability Claims and the FCRA — The State of Confusion*, 63 Consumer Fin. L. Q. Rep. 19, 22 (2009) ("In the absence of information being disclosed pursuant to sections 1681g, 1681h, or 1681m . . ., section 1681h(e) is not applicable and cannot even potentially be in conflict with section 1681t(b)(1)(F)." (internal quotation marks and brackets omitted)). As such, § 1681h(e) "is not actually a preemption provision. Rather it is a *quid pro quo* grant of protection for statutorily required disclosures." *Webb v. Bob Smith Chevrolet, Inc.*, No. 04-CV-66, 2005 WL 2065237, at *6 (W.D. Ky. Aug. 24, 2005) (quoting *McAnly v. Middleton & Reutlinger, P.S.C.*, 77 F. Supp. 2d 810, 814 (W.D. Ky. 1999)); *see also Kronstedt v. Equifax, CSC*, No. 01-CV-0052, 2001 WL 34124783, at *20 (W.D. Wis. Jan. 28, 2001) (noting that § 1681h(e) is a "quid pro quo for statutorily required disclosures, [and] applies only to claims based on information disclosed pursuant to 1681g, 1681h or 1681m" (internal quotation marks omitted)). In other words, § 1681h(e) is a limitation of liability provision that provides a qualified immunity defense to defendants who provide consumers required disclosures pursuant to §§ 1681g, 1681h, or 1681m. *See* Tyson, *supra*, at 19, 22 (explaining that prior to the FCRA's amendment to include the preemption provisions of § 1681t, § 1681h(e) was traditionally understood to be a limitation of liability provision, and that confusion surfaced when courts later "ignored the scope of the 'limitation of liability'"); *see also Knudson v. Wachovia Bank*, 513 F. Supp. 2d 1255, 1259 (M.D. Ala. 2007) (noting that § 1681h(e) limits "the scope of the immunity it provides to particular kinds of claims based on information disclosed pursuant to section 1681g, 1681h, or 1681m . . . ." (internal quotation marks omitted)); *Webb*, 2005 WL 2065237, at *5 ("Since various parts of the federal statute require consumer reporting agencies and information users to disclose information to consumers . . . [§ 1681h(e)] guarantees that the agencies or users cannot be sued for those required disclosures under state tort law.").

Sections 1681g and 1681h apply only to information required to be provided by consumer reporting agencies. *See* 15 U.S.C. §§ 1681g, 1681h; *see also Sites v. Nationstar Mortgage LLC*, 646 F. Supp. 2d 699, 705 (M.D. Pa. 2009) (stating that § 1681g and § 1681h "speak exclusively to consumer reporting agencies"). Section 1681m and the remaining text of § 1681h(e), relating to information disclosed by a user of a consumer report, require that the defendant took an "adverse action" against the consumer based on the consumer report. *See* 15 U.S.C. §§ 1681h(e), 1681m; *see also Sites*, 646 F. Supp. 2d at 705-06. Thus, following the plain language of the statute, § 1681h(e) does not apply here because Plaintiffs do not allege that any Defendant is a consumer reporting agency or that any Defendant is a user of a credit report that took an adverse

Accordingly, Defendants' Motion to Dismiss Plaintiffs' claims of breach of fiduciary duty, negligence, and wrongful foreclosure is granted.

### III. Conclusion

For the reasons stated herein, Defendants' Motion to Dismiss is granted in part and denied in part. Plaintiffs' quiet title claim against HLS, TILA claim against HLS, breach of contract claim against Nationpoint, breach of fiduciary duty and negligence claims against HLS, and wrongful foreclosure claim against LaSalle and HLS are dismissed with prejudice. Defendants' Motion to Dismiss all other claims is denied. The Clerk of Court is respectfully directed to terminate the pending motion (Dkt. No. 42).

SO ORDERED.

Dated: March 2, 2010
        White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

action against Plaintiffs based on a consumer report. *See Sites*, 646 F. Supp. 2d at 706 (finding § 1681h(e) inapplicable when the "[d]efendant [was] neither a credit reporting agency nor a user of a consumer report that" took an adverse action); *Leet*, 480 F. Supp. 2d at 430 (concluding that § 1681h(e) had "no effect" on the case when the defendant was not a consumer reporting agency and had not been sued based on any adverse actions taken against the plaintiff); *Holtman*, 2006 WL 1699589, at *4 (finding § 1681h(e) inapplicable when the plaintiffs did not allege that the defendant was a consumer reporting agency or that the defendant took actions based on a consumer report).

Service List (By ECF)

Jimmy Barberan
Tatsiana Barberan
15 Woodlake Drive
Middletown, NY 10940

Scott Stephen McKessy, Esq.
Reed Smith, LLP
1650 Market Street
Philadelphia, PA 19103

Jordan W. Siev. Esq.
Joseph Benjamin Teig, Esq.
Reed Smith
599 Lexington Avenue
New York, NY 10022

Craig P. Curcio, Esq.
Law Offices of Craig P. Curcio
One Edgewater Drive
Middletown, NY 10940